1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DAMARIO RASHEED STERLING, DAVID SHERWOOD JOHNSON, ELIZABETH ECKLUND, and ROBERT ERICKSON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CAMI L. FEEK, Commissioner, Washington State Employment Security Department, in her individual capacity, and in her official capacity;<br><br>Defendant. | No. 22-5250-cv<br><br>COMPLAINT—CLASS ACTION FOR INJUNCTIVE RELIEF AND MONEY DAMAGES—42 U.S.C. § 1983<br><br>Jury trial demanded |

## I. NATURE OF THE ACTION

1.      Since March 2020, several hundred thousand people lost jobs due to the Covid-19 pandemic and its economic consequences and sought benefits from the Washington Employment Security Department. Many Claimants including the Plaintiffs in this case were paid benefits only to later learn that their benefit entitlement was later "redetermined," in whole or in part, by state officials. Plaintiffs received determinations retroactively denying their unemployment benefits or assessing overpayment charges that were untimely and legally void. Those redeterminations were used to take money from Plaintiffs they desperately needed in order to survive amid an unprecedented economic disaster. Plaintiffs only learned of the actions of the Employment Security Department through confusing and misleading form correspondence that failed to inform Plaintiffs of the basis for why their money was being taken away, depriving

COMPLAINT - 1

**Smith & Dietrich Law Offices PLLC**
3905 Martin Way E, Suite F
Olympia, WA 98506
Tel. (360) 915-6952

Plaintiffs of due process of law including any meaningful opportunity to challenge the state's redeterminations and overpayment assessments.

2.     Defendant Cami Feek, as the acting Commissioner and later as the Commissioner of the Employment Security Department, caused the violations of Plaintiffs' civil rights alleged in this Complaint by approving or ratifying the unlawful actions, policies and procedures of the Department challenged in this action, including how the Department redetermined claimants' entitlement to unemployment benefits, and communicated with claimants about any appealable decisions of ESD related to unemployment benefit claims. Plaintiffs seek monetary damages for Defendant's actions in her personal capacity, and declaratory and injunctive relief for Defendant's actions in her official capacity, as alleged in this Complaint.

3.     Plaintiffs seek an injunction to stop Defendant's unlawful practices described below, and seek nominal, actual, and exemplary monetary damages for the losses they suffered related to Defendant's violation of Plaintiffs' rights under federal law, as well as Plaintiffs' attorney fees and costs of this action.

## II. PARTIES

4.     Plaintiff Damario Rasheed Sterling is a resident of King County, Washington.

5.     Plaintiff David Sherwood Johnson is a resident of Kitsap County, Washington.

6.     Plaintiff Robert Erickson is a resident of Multnomah County, Oregon.

7.     Plaintiff Elizabeth Ecklund is a resident of Thurston County, Washington.

8.     Defendant Cami L. Feek is a resident of Thurston County, Washington. She was either the acting Commissioner or the duly appointed Commissioner of the Employment Security Department during the times relevant to this Complaint.

9.     Each act and threat to act alleged below was done by Defendant under color and pretense of the statutes, ordinances, regulations, customs and usages of the State of Washington.

//

COMPLAINT - 2

**Smith & Dietrich Law Offices PLLC**
3905 Martin Way E, Suite F
Olympia, WA 98506
Tel. (360) 915-6952

### III. VENUE AND JURISDICTION

10.     This Court has original jurisdiction over Plaintiffs' claims under federal law pursuant to 28 U.S.C. § 1331, because they present a federal question.

11.     This Court has personal jurisdiction over Defendant because she undertook the actions and omissions that are the subject of this action in Washington, including within this District. Defendant has her residence in and continuously and systematically conducts business in Washington, including within this District.

12.     This action should be assigned to the Tacoma division of this Court due to Defendant's location in Thurston County, Washington. A substantial amount of the actions and omissions at issue in this Complaint occurred in Thurston County, Washington. LCR 3(e)(1).

### IV. BACKGROUND ALLEGATIONS

**A. Overview of Legal Responsibilities of the Washington Employment Security Department.**

13.     Washington State's unemployment compensation system is part of a cooperative federal-state program established in response to the Great Depression. The State administers the program in accordance with federal standards. The purpose of the program (codified at Title III of the Social Security Act, 42 U.S.C. §§ 501 *et seq.*) is to provide cash assistance to workers as quickly as possible after they lose employment. The State of Washington has implementing legislation known as the Employment Security Act (codified in Title 50 of the Revised Code of Washington) and regulations (in Title 192 of the Washington Administrative Code).

14.     The Employment Security Act provides that it "shall be liberally construed for the purpose of reducing involuntary unemployment and the suffering caused thereby to the minimum." RCW 50.01.010. The Act pronounces unemployment to be the "greatest hazard of our economic life;" the legislature intended the Act to "remedy any widespread unemployment situation which may occur and to set up safeguards to prevent its recurrence in the years to come." *Id*.

COMPLAINT - 3

15. Washington State's unemployment compensation program is financed in large part by grants provided by the federal government pursuant to the Social Security Act, 42 U.S.C. §§ 501-503. Accordingly, the State's program must meet certain minimum standards established by federal statutes and regulations. Those standards require the State to create provisions for "such methods of administration ... as are found by the Secretary of Labor to be reasonably calculated to insure full payment of unemployment compensation when due" and that ensure the "[o]pportunity for a fair hearing, before an impartial tribunal, for all individuals whose claims for unemployment compensation are denied." 42 U.S.C. §§ 503(a)(l), (a)(3).

16. State statutes and regulations also govern administration of its unemployment compensation program, including the designation of the Employment Security Department (ESD for short) as the administering agency. RCW 50.08.010. The State of Washington Office of Administrative Hearings (OAH) adjudicates administrative appeals of ESD unemployment compensation determinations. *See generally* WAC 192-04.

### a. Eligibility for Unemployment Compensation Benefits

17. To be eligible for unemployment compensation benefits, claimants seeking benefits from Washington State must be unemployed through no fault of their own. RCW 50.20.010; 50.04.310(1) (definition of unemployed individual). Other basic requirements include that the claimant must complete an application for benefits, satisfy any applicable waiting week and job search requirements, and must be able and available to perform suitable work if it becomes available. RCW 50.04.010(1).

//

COMPLAINT - 4

18.     As a result of the COVID-19 pandemic (and the associated massive job loss), the number of Washington State workers who lost income and were required to file an unemployment claim in Washington to gain access to safety-net benefits increased dramatically. In the years 2016 to 2019, the number of individuals receiving benefits from



ESD was well below 100,000 each month; in May 2020, the same figure shot to a high of over 700,000 individuals. *See* 2020 Labor and Economic Market Report, Washington Employment Security Department (published March 2021), 45 https://media.esd.wa.gov/esdwa/Default/ESDWAGOV/labor-market-info/Libraries/Economic-reports/Annual-Report/2020-labor-market-and-economic-report.pdf (graphic featured above).

19.     On March 27, 2020, Congress passed the federal Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), in part in response to the dramatic increase in the need for unemployment benefits and to account for the fact that some of the requirements of regular unemployment benefits would tend to exclude some individuals who were adversely affected by the unprecedented job loss caused by the pandemic. 15 U.S.C. §§ 9021-9032.

20.     The CARES Act created three new sources of federally-funded unemployment benefits: Federal Pandemic Unemployment Compensation ("FPUC"), Pandemic Emergency Unemployment Compensation ("PEUC"), and Pandemic Unemployment Assistance ("PUA"). These programs were extended by the federal Continued Assistance for Unemployed Workers Act and the American Rescue Plan Act. Washington's ESD paid out traditional unemployment

COMPLAINT - 5

**Smith & Dietrich Law Offices PLLC**
3905 Martin Way E, Suite F
Olympia, WA 98506
Tel. (360) 915-6952

insurance benefits and also these pandemic-related benefits to numerous unemployed individuals

in the three years preceding the filing of this Complaint.

**b.    Application Process for Unemployment Compensation Benefits**

21.    When an individual files an initial claim for unemployment compensation in

Washington, ESD must issue a Notice of Monetary Determination. This Monetary

Determination indicates whether claimants are monetarily eligible for unemployment

compensation based on a comparison between Washington's eligibility requirements and the

claimant's earnings during a 12-month base period based on when the claimant filed the initial

claim. RCW 50.20.140(5). If the claimant has insufficient wages in the base period, ESD issues

a Monetary Determination denying benefits on the ground that the claimant is monetarily

ineligible. *See* RCW 50.20.180 (if claimant is denied benefits, they "shall be promptly issued

written notice of the denial and the reasons therefor"); WAC 192-120-020(1)(a) (defining

monetary determination as the "statement of wages and hours"). If ESD finds that the claimant

has sufficient wages in the base period (and is therefore monetarily eligible), the agency issues

a Monetary Determination that includes the claimant's maximum weekly benefit amount and

maximum potential benefit amount. RCW 50.20.140(5).

22.    In addition to considering a claimant's monetary eligibility, ESD must make a

preliminary assessment shortly after a claim is filed as to whether there are issues with a claim

unrelated to the base period wage requirements (for example, issues related to the individual's

job separation or ability and availability for work). If no such issues are identified, ESD must

promptly issue the benefits. If ESD detects a potential issue, it assigns the matter to an

adjudicator for review. ESD then conducts fact finding by contacting the claimant, the employer,

and/or any other necessary parties. *See* WAC 192-120-030 (ESD will notify claimant about any

potential eligibility issue). ESD must promptly conduct and conclude these fact-finding

investigations. *See* RCW 50.20.160(3) (limiting time for ESD to redetermine an allowance of

benefits to the claimant once it becomes final); WAC 192-120-030 (claimant is entitled to

COMPLAINT - 6

adequate notice of an eligibility issue before ESD makes a decision); ESD adjudicator manual, Section 5400 (ESD manual instructs employees that under federal performance standards, "we must mail [*sic*] nonmonetary decision no later than 21 days after we know or should have known about the issues").

23.    If the fact-finding investigation leads the ESD's adjudicator to conclude the claimant is eligible and qualified to receive benefits, ESD must promptly issue the benefits. WAC 192-110-090. If the fact-finding investigation leads the adjudicator to disqualify or hold the claimant ineligible for benefits, ESD must promptly issue a determination letter reflecting the denial. RCW 50.20.180. The claimant is entitled to an administrative appeal of that determination under both federal and Washington law. 42 U.S.C. § 503(a)(3); RCW 50.32.020.

24.    While PUA benefits were available, ESD required claimants to file a separate application for PUA benefits (after the agency denied their initial application for regular benefits). PUA benefit determinations were subject to the same procedural protections (including notice and a hearing) as regular unemployment compensation benefits. *See* 15 U.S.C. § 9021(h) (requiring states to follow existing Disaster Unemployment Assistance regulations at 24 C.F.R. Part 625 to the administration of PUA unless otherwise stated); 20 C.F.R. 625.11 (requiring states to apply state law to the claims for and payment of DUA); 20 C.F.R. 625.14(g) (requiring states to apply notice provisions of 20 C.F.R. 625.09 and appeal provisions of 20 C.F.R. 625.10 to DUA overpayment procedures); John Pallasch, UIPL No. 16-20, at 1-9, 1-11 to 1-12, U.S. DEP'T OF LAB. (Apr. 5, 2020), https://wdr.doleta.gov/directives/attach/UIPL/UIPL_16-20.pdf. An award of PUA benefits would also result in an entitlement to FPUC supplemental benefits, which were also subject to the same procedural protections (including notice and a hearing) as regular unemployment compensation benefits. 15 U.S.C. § 9023(f)(4); John Pallasch, UIPL No. 15-20, at 1-6, U.S. DEP'T OF LAB. (Apr. 4, 2020) https://wdr.doleta.gov/directives/attach/UIPL/UIPL_15-20.pdf.

COMPLAINT - 7

25.     Claimants were eligible to apply for PEUC benefits if they had exhausted their regular unemployment compensation entitlements or if their benefit year had expired. 15 U.S.C. § 9025(a)(2). PEUC benefits were subject to the same procedural protections (including notice and a hearing) as regular unemployment compensation benefits. *See* 15 U.S.C. § 9025(e)(3)-(4) (requiring states to apply state law when issuing determinations and offsetting PEUC overpayments). *See also* John Pallasch, UIPL No. 17-20, at I-7 to 1-8, U.S. DEP'T OF LAB. (Apr. 10, 2020) https://wdr.doleta.gov/directives/attach/UIPL/UIPL_17-20.pdf.

26.     For all of the above programs, a claimant must certify each successive week of unemployment by filing a weekly continued claim form with ESD. The continued claim form leads to a determination of the individual's weekly eligibility for unemployment benefits by collecting information about the claimant's ability to work, availability for work, compliance with work search requirements (when not waived), wages earned or work completed, and other factors contributing to the eligibility determination for that week. RCW 50.20.140(4); WAC 192-140-005.

27.     The initiation of benefit payments creates a presumption of continuing eligibility as to future payments during the applicable time period. "[B]ased on [the] initial determination and in the absence of facts clearly establishing current ineligibility, the state agency presumes the claimant's continued eligibility until it makes a determination otherwise." Grace Kilbane, UIPL No. 04-01, at ¶ 7, U.S. DEP'T OF LAB. (Oct. 27, 2000) https://wdr.doleta.gov/directives/attach/UIPL4-01.cfm. The state agency can pause benefits for a brief 14-day period to investigate facts that could indicate ineligibility, but it must then turn benefits back on or produce a written notice. *Id.*, ¶ 6. In the event that ESD makes a decision that a claimant is no longer eligible for benefits or denies benefits for any particular week, the claimant is entitled to the same procedural protections that apply to initial determinations, including notice and an administrative appeal. 42 U.S.C. § 503(a)(3); RCW 50.20.190(3).

**Smith & Dietrich Law Offices PLLC**
3905 Martin Way E, Suite F
Olympia, WA 98506
Tel. (360) 915-6952

28.    ESD is not permitted to redetermine prior, final allowances of benefits to claimants except under certain narrow circumstances. RCW 50.20.160(3). Although ESD's Commissioner may redetermine such allowance within two years after the benefit year in which a payment occurs to recover improper payments, "in the absence of fraud, misrepresentation, or nondisclosure, this provision or the provisions of RCW 50.20.190 shall not be construed so as to permit redetermination or recovery of an allowance of benefits which having been made after consideration of the provisions of RCW 50.20.010(1)(c), or the provisions of RCW 50.20.050, 50.20.060, 50.20.080, or 50.20.090 has become final." *Id*.

29.    ESD makes informal decisions as to a claimant's eligibility for benefits on a weekly basis each time the claimant certifies responses to their weekly claim eligibility questions, and seeks a week of benefit payments based on the same. Where ESD informally allows benefits by paying a weekly claim, thirty days goes by, and there is no showing of fraud, misrepresentation or nondisclosure, RCW 50.20.160(3) prohibits ESD from issuing a redetermination to deny benefits addressing issues already informally allowed in the claimant's favor. *In re Barrett*, Empl. Sec. Comm'r Dec.2d 878 (1999); *In re Gilpin*, Empl. Sec. Comm'r Dec.2d 872 (1999). Although the payment of a week's benefits does not in itself constitute a decision in the claimant's favor concerning job separation issues, ESD informally adjudicates the claimant's job separation as qualifying for benefits when ESD pays benefits and a reasonable time to conduct an investigation of any job separation issue expires. *In re Winters*, Empl. Sec. Comm'r Dec.2d 1029 (2019) (holding job separation issues as noted in RCW 50.20.160(3) are "considered and determined by the Department after it has had a reasonable opportunity to conduct an investigation into that specific issue"). If ESD redetermines an allowance of benefits more than 30 days after any informal allowance becomes final, without a showing of fraud, misrepresentation or non-disclosure, ESD's redetermination decision is *void ab initio* (null and void) because it violates RCW 50.20.160(3). *In re Weingard*, Empl. Sec. Comm'r Dec.2d 920 (2008).

COMPLAINT - 9

**Smith & Dietrich Law Offices PLLC**
3905 Martin Way E, Suite F
Olympia, WA 98506
Tel. (360) 915-6952

c.      **Reduction of Benefits Through Offset as a Result of Overpayments**

30.      An overpayment occurs when ESD pays benefits that the claimant is not entitled to receive. RCW 50.20.190(1). When investigating an issue that may result in an overpayment, ESD must "continue to make timely [unemployment compensation] payments (if due) and wait to commence recovery of overpayments until an official determination of ineligibility is made." Portia Wu, UIPL No. 1-16, at ¶ 4(a), U.S. DEP'T OF LAB. (Oct. 1, 2015) https://wdr.doleta.gov/directives/attach/UIPL/UIPL_01-16_Acc.pdf.

31.      If ESD identifies an overpayment issue, it must notify the claimant of the potential overpayment, give the claimant an opportunity to be heard, and send the claimant a determination of overpayment and notice of appeal rights before reducing benefits. *Id.* The same procedural protections that apply to denials of benefits discussed above—including notice and the right to administrative appeal—apply to determinations of overpayments. 42 U.S.C. § 503(g)(l); RCW 50.20.190(3). A determination establishing an overpayment cannot occur until the claimant has an opportunity to be heard, which implies the claimant must first be provided notice of any potential issue(s) and a reasonable amount of time to respond. Portia Wu, UIPL No. 1-16, Change 1, Attachment (Questions and Answers), at ¶ (I)(3), U.S. DEP'T OF LAB. (Jan. 13, 2017) (citing *California Human Resources Dept. v. Java*, 402 U.S. 121 (1971)) https://wdr.doleta.gov/directives/attach/UIPL/UIPL_01-16-Change-1.pdf. A formal determination including an overpayment assessment must provide "'sufficient information to enable [the individual] to understand the determinations, the reasons therefor, and their rights to protest, request reconsideration, or appeal.'" Portia Wu, UIPL No. 1-16, at ¶ 4(c) (quoting Standard for Claim Determination § 6013.C.2 and citing notice requirements in ET Handbook 301 including "1) a summary statement of the material facts on which the determination is based; 2) the reason for allowing or denying benefits; and 3) the conclusion of the decision based on the state's law")). State unemployment agencies may not attempt to recover on overpayments

COMPLAINT - 10

**Smith & Dietrich Law Offices PLLC**
3905 Martin Way E, Suite F
Olympia, WA 98506
Tel. (360) 915-6952

until "an official determination of the overpayment has been made, consistent with Federal law requirements." *Id.*, at ¶ 4(d).

32.     Under some circumstances, ESD may recoup overpayments by offsetting future benefits. To pursue an offset, ESD must first determine whether the overpayment qualifies for offset. An overpayment may only be satisfied through an offset from continuing claim payments if the claimant owes an overpayment and does not make monthly minimum payments. WAC 192-230-100. In addition, ESD may make a discretionary decision to waive recoupment of most overpayments. RCW 50.24.020; WAC 192-230-110. ESD must "clearly communicate the potential availability of a waiver to individuals when establishing an overpayment and, if an individual requests a waiver, make an official determination on the waiver request before initiating overpayment recovery." Portia Wu, UIPL No. 1-16, at ¶ 4(a) U.S. DEP'T OF LAB., (Oct. 1, 2015) https://wdr.doleta.gov/directives/attach/UIPL/UIPL_01-16_Acc.pdf; ESD adjudicator manual Section 5600 (Appeals and Petitions) ("We do not collect any overpayment while a timely appeal is pending.").

33.     Washington's Employment Security Department frequently pays claimants benefits the claimant should not have received, which are known as overpayments. Overpayment can be caused by agency error, claimant or employer error, or other reasons, including in rare cases fraud. Overpayments can lead to ESD issuing an assessment to the recipient of the funds or using various methods to attempt to collect the money back from the unemployment claimant who received it. In the fiscal year ending September 30, 2021, the United States Department of Labor reports that over ten percent of the unemployment benefits paid by Washington's ESD ($112,822,420 of the total paid amount of $1,126,577,243) represented overpayments.[1] In the three most recent years ending June 30, 2021, the Department of Labor estimates ESD

---

[1] https://www.dol.gov/sites/dolgov/files/ETA/UIOverpayment/XLS/2021%20-%20Fiscal%20Year%20Data%20Ending%20September%2030.xlsx (accessed March 24, 2022) (report showing fiscal year 2021 overpayment data extrapolations based on Benefits Accuracy Management reporting by unemployment agencies across the United States).

COMPLAINT - 11

**Smith & Dietrich Law Offices PLLC**
3905 Martin Way E, Suite F
Olympia, WA 98506
Tel. (360) 915-6952

improperly overpaid $308,721,487 in benefits, yielding an average improper payment rate of approximately 9.68% of benefits paid.[2]

## V. FACTUAL ALLEGATIONS

a.    **Defendant.**

34.    Defendant Cami Feek became the acting Commissioner of the Employment Security Department on February 1, 2021. She was formally appointed and became the Commissioner on June 9, 2021. Formerly, she had served as ESD's Paid Family and Medical Leave Director prior to when she became the Deputy Commissioner, and as ESD's Chief Operating Officer starting in August 2018.

35.    Since February 2021, Defendant Feek oversaw the administration of the State of Washington's unemployment benefits programs. By state law, her position gave her "the power and authority to adopt, amend, or rescind such rules and regulations, to employ such persons, make such expenditures, require such reports, make such investigations, and take such other action as he or she deems necessary or suitable to [administer Title 50 of the Revised Code of Washington]." RCW 50.12.010(1); RCW 50.08.010 (establishing Department with Commissioner at its head). Defendant also has the right to appoint deputies to conduct business on behalf of the Department, and "may delegate to any person appointed such power and authority as the commissioner deems reasonable and proper for the effective administration of this title." RCW 50.12.020.

36.    Since 2018, ESD has used proprietary enterprise software known as the Unemployment Tax and Benefits system (UTAB) to administer the state's unemployment benefits program. UTAB stores data on claims, claimants, employers, special wage information and document scans for the purpose of managing and paying all aspects of unemployment

---

[2] https://www.dol.gov/agencies/eta/unemployment-insurance-payment-accuracy/2021/WA (accessed March 24, 2022).

COMPLAINT - 12

Smith & Dietrich Law Offices PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506
Tel. (360) 915-6952

benefits claims. According to ESD's own policies, customs, and usages, staff must use form correspondence generated through UTAB to communicate with claims recipients.

37. Forms generated by UTAB are frequently poorly written and confusing to the point of depriving a recipient of information sufficient to understand the factual or legal basis for the ESD's decision. Letters like the Re-Evaluate Claim letter Plaintiff Sterling received (*see* ¶¶ 47-56, below), and the Potential New Claim letter that Plaintiffs Johnson and Erickson received (*see* ¶¶ 57-64 and ¶¶ 74-48, below, respectively), were generated through UTAB.

**i.    Defendant Caused the Issuance of Denial Notices and Overpayment Assessments Lacking Explanations of the Facts and Law Underpinning ESD's Determinations**

38. Defendant is aware that UTAB's form letters frequently fail to communicate the basis for ESD decisions and the relevant law and facts considered by the agency in issuing overpayment notices. Starting as long ago as November 2019, ESD employees discussed an ongoing problem that the Re-Evaluate Claim letter in UTAB is considered legally "deficient" by the Office of Administrative Hearings that hears appeals from ESD decisions. When a claimant appeals a decision reflected in ESD's Re-Evaluate Claim letter, the assigned administrative law judge at OAH rules the letter is legally void under a standing OAH policy. OAH's orders routinely direct ESD to vacate any denial of benefits or overpayment amount stated in the Re-Evaluate Claim letter on this basis. But Defendant is aware ESD's UTAB software continues to issue letters that are legally "deficient," and UTAB prevents agency staff from implementing decisions voiding those letters.

39. Internal e-mail messages from ESD reveal that ESD employees have been directed to issue additional letters to "paper over" the agency decisions that are originally communicated in legally "deficient" UTAB letters. In November 2019, one ESD employee wrote colleagues that "UTAB will not remove the overpayments from the re-eval cases." She noted another benefits decision causing trouble in UTAB in September 2020, which "like most of them, asks for a 'letter of allowance'" in addition to holding the ESD decision was "deficient". This

**Smith & Dietrich Law Offices PLLC**
3905 Martin Way E, Suite F
Olympia, WA 98506
Tel. (360) 915-6952

was reportedly "a problem a couple of times since we were re-writing the out-of-UTAB letters with more details, but still as denials." A response to this message from another ESD employee indicated that "Policy, legal and UICS are in conversations on how to move forward and finding resolutions with the re-evaluate process." On information and belief, Defendant knew of and ratified or caused the continuation of ESD's practice of sending legally deficient determination letters and overpayment notices to claimants.

40.     Messages from another ESD employee in September 2020 reflect the agency's knowledge that many determination letters issued through UTAB (including, but not limited to, the Re-Evaluate Claim form letter) are legally "deficient." This employee forecasted that due to the flawed correspondence issued by UTAB, "Basically, we will get these cases back from OAH and have to do the work over again or grant the claimant remedies that the UTAB is unable to do." A message from the Office of Administrative Hearings to ESD staff and managers from around the same time notes that all cases related to the letter "Extended Benefits-Not an Exhaustee" are being dismissed because the letter is deficient.

41.     Defendant did not respond to the concern that ESD was issuing legally infirm benefits denial notices to claimants, some of which included overpayment notices, by stopping these troubling practices. Instead, Defendant, on information and belief, knew of and ratified a work-around in which the deficient notices continue to be issued and used to assess overpayments, notwithstanding that ESD's determination letters fail to state the facts and law supporting a denial or overpayment assessment. On the back end, ESD staff regularly compile spreadsheets of data listing all claimants who have appealed from ESD decisions and prevailed by convincing OAH that the ESD's determination notice is "deficient." These individuals are batched and sent to ESD's "Policy" team to have different determination letters issued after the conclusion of the claimant's successful appeal, to reinstitute the same outcome reflected in the deficient decisions set aside on appeal. Frequently, the vacated decisions concern the Re-

**Smith & Dietrich Law Offices PLLC**
3905 Martin Way E, Suite F
Olympia, WA 98506
Tel. (360) 915-6952

Evaluate Claim letter, Potential New Claim letter, and other commonly used form correspondence such as the letters Plaintiffs received as alleged in this Complaint.

42.     To this day, Defendant's conduct causes ESD to send confusing and legally deficient benefits denial and overpayment assessment notices to numerous unemployment claimants. Defendant has caused ESD to recoup funds from numerous claimants through overpayment notices attached to confusing and factually and legally unfounded redetermination letters. Since March 2020, hundreds (or more) of such determination notices appealed by claimants statewide have been summarily overturned and sent back to the Employment Security Department by the Washington Office of Administrative Hearings for further action consistent with claimants' due process rights and rights under Title 50 RCW. Members of the public have complained repeatedly to the Department and in public forums about the unfairness and indeterminacy of Defendant's arbitrary redeterminations, including those using the Re-Evaluate Claim form. As a result, Defendant is aware that ESD's redeterminations often lack any basis to sustain liability for an overpayment, nor do they establish any reason why the receiving claimant is not entitled to keep his or her benefits.

### ii.     Defendant Causes ESD to Wrongfully Redetermine Claimants' Entitlement to Their Benefits and Issue Untimely Overpayment Notices

43.     ESD staff also regularly use UTAB to issue redetermination notices that assess claimants for benefit overpayments. These notices frequently 1) redetermine the claimant's entitlement to benefits paid (i.e. announce that the claimant is not entitled to benefits); 2) are issued over thirty days after ESD made a final allowance of the benefits in question to the claimant; 3) lack any factual or legal argument that the claimant has engaged in fraud, misrepresentation, or non-disclosure, and 4) follow ESD's consideration of the claimant's certification that the claimant is able and available to work, or the claimant's job separation circumstances, or an alleged refusal to work. RCW 50.20.160(3).

COMPLAINT - 15

**Smith & Dietrich Law Offices PLLC**
3905 Martin Way E, Suite F
Olympia, WA 98506
Tel. (360) 915-6952

44.     Redetermination letters from ESD, many of which include overpayment assessments, are routinely set aside as "void ab initio" by the Washington Office of Administrative Hearings because they are untimely and/or procedurally deficient in violation of the requirements of RCW 50.20.160(3) summarized above. When a decision is vacated on these grounds in an administrative appeal, OAH provides a copy of its decision directly to ESD. Defendant is aware that numerous ESD determination letters and overpayment notices continue to be issued despite violating RCW 50.20.160(3). ESD lacks legal authority to issue such letters and the letters have no legal force or effect. Yet Defendant causes ESD to continue to issue such deficient redetermination and/or overpayment assessment letters, many of which are not received, understood, or timely appealed by the receiving claimant.

45.     Defendant continues to cause ESD to propound the untimely and deficient redetermination and overpayment assessment letters because they occasionally survive the appeal process and can be used to collect overpayments. Claimants may either fail to appeal on time, lack the energy and dedication to appeal every wrongful decision by ESD and pursue it to a successful appeal hearing, or are unable to invalidate the determination letter due to a various causes including for example a lack of legal representation. In such circumstances, Defendant causes ESD to issue untimely and deficient redetermination letters and overpayment assessments to take benefits from needy unemployment benefits recipients, despite lacking the legal authority to do so.

   **b.     Plaintiffs**

46.     Plaintiffs are claimants for unemployment benefits who reside or have resided in this District, and/or whose unemployment claims were affected by Defendant's complained of actions and omissions occurring in this District. Defendant has caused Plaintiffs to be injured by: 1) denying their benefits without sufficient notice or process, 2) seizing their benefits through offset without sufficient notice or process, 3) unreasonably delaying benefit (re)determinations and payments, and/or 4) depriving Plaintiffs of sufficient information to explain why the

COMPLAINT - 16

**Smith & Dietrich Law Offices PLLC**
3905 Martin Way E, Suite F
Olympia, WA 98506
Tel. (360) 915-6952

Employment Security Department has denied or assessed an overpayment related to Plaintiffs' claims for benefits. Plaintiffs' troubling ordeals are set forth below.

### i.    Damario Rasheed Sterling

47.    Damario Rasheed Sterling is a professional contractor and refinisher who lost his job around March 2020 due to the Covid-19 pandemic. Mr. Sterling applied for benefits from ESD and was approved as monetarily eligible; he began to receive payments in March 2020.

48.    Mr. Sterling's original monetary determination from ESD stated that he "may receive up to $551 each week you are eligible for unemployment benefits." The letter stated that "[w]e may need to adjust the amount based on a number of factors." The letter told Mr. Sterling that "[a]nytime there is an adjustment to your determination, we will send you a *Redetermination of Unemployment Claim*. We must issue a redetermination before you can file an appeal." The letter encouraged him to "[b]*e sure to file your weekly claims, even if you are waiting for an answer from us*." (emphasis in original).

49.    In January 2021, ESD sent Mr. Sterling a determination letter titled "Re-evaluate Claim". It said that "[w]e previously DENIED your benefits based on the information we had at that time. We got new information. This decision replaces the earlier one." The letter continued:

> We re-evaluated your unemployment benefits starting Mar 15 2020. This update was due to a change in at least one of the items below:
>
> - Determination of a new issue.
> - Redetermination of an existing issue.
> - Determination or redetermination of a monetary decision.
> - An update to your weekly claim deductions.
> - Processing of an appeal decision.

It said, "**You might owe us $7332.00 as a result of this decision.** We paid you too much. This is called an overpayment. You might need to pay it back." The letter informed Mr. Sterling that if he did not complete and return a "waiver request form," he would have to repay the entire overpayment amount in addition to any supplemental weekly benefits funded by the federal government.

COMPLAINT - 17

**Smith & Dietrich Law Offices PLLC**
3905 Martin Way E, Suite F
Olympia, WA 98506
Tel. (360) 915-6952

50.    The January 29 determination letter included an attached table of purported overpayment amounts totaling $7,332.00 over 14 weeks; these weekly benefit payments dated from September 20 to December 26, 2020. All of the weekly benefit payments occurred over thirty days prior to the January 29 redetermination letter and overpayment notice. The table indicated that Mr. Sterling was denied benefits for "multiple reasons" during most weeks identified in the notice, though none of the reasons were stated. There is no allegation in the letter that the claimant engaged in fraud, misrepresentation, or nondisclosure. No reason for the overpayment determination appears anywhere in this letter.

51.    The letter said that Mr. Sterling could appeal if he disagreed. Mr. Sterling requested that ESD waive the overpayment, and ESD denied his waiver request in a February 11, 2021 letter that informed him for the first time that "[w]e denied your unemployment benefits starting Mar [*sic*] 15 2020 until the reason for our decision no longer exists." Mr. Sterling then filed a timely appeal challenging ESD's January 29 determination letter and overpayment notice and the decision denying him a waiver of the overpayment.

52.    While Mr. Sterling awaited a decision on his appeal, ESD took thousands of dollars through "offsets" from his continuing claim payments. This included $6,994 to compensate ESD for the overpayment amount listed in its January 29, 2021 notice, even though the legally void decision had been timely appealed. ESD did not provide Mr. Sterling with any prior notice that the offsets were occurring, or give him any appealable decision allowing him to challenge the offsets.

53.    An administrative law judge later ruled that ESD's January 29, 2021 overpayment notice denied Mr. Sterling due process of law under the United States Constitution in that "[t]he Department's Determination Letter failed to inform the parties about the facts that led up to the Department's determination. Indeed, the Determination Letter fails to notify the parties about the statute or regulation on which it based its decision." The decision ordered that Mr. Sterling was not disqualified from receiving any benefits and did not owe any overpayment as a result of

**Smith & Dietrich Law Offices PLLC**
3905 Martin Way E, Suite F
Olympia, WA 98506
Tel. (360) 915-6952

the January 29, 2021 letter. A copy of the decision was provided to ESD on or around August 12, 2021.

54.    Despite ESD losing the appeal, ESD has refused to return to Mr. Sterling the funds it deducted from Mr. Sterling's weekly benefits as an offset to pay for the January 29, 2021 overpayment amount. Mr. Sterling has communicated repeatedly with ESD seeking the return of his funds, and ESD refuses to return his benefits or identify any reason why ESD has the right to keep his money.

55.    Mr. Sterling was damaged by ESD's unlawful January 29, 2021 redetermination and overpayment assessment. He was forced to spend time responding to the Department's baseless notice and arbitrary decision to deprive him of thousands of dollars, including by having to appeal the notice in writing; communicate with ESD in an effort to forestall the unlawful seizure of his benefits while he remained unemployed and dependent on meager ESD-administered benefits for income; and spend time and his cellular telephone's battery, minutes, and data on internet access to dispute the baseless determination notice. Despite multiple e-mail contacts and telephone calls to ESD, Mr. Sterling received no actual acknowledgement of his pleas to correct the baseless determination notice prior to his hearing. Moreover, Defendant subjected Mr. Sterling to these actual deprivations of his property rights at a time when she knew or should have known that he was forced to subsist on at little at $275 a week in net income.

56.    For over six months, Mr. Sterling suffered emotionally from stress, anxiety, and humiliation because he could identify no basis for the government's decision to deprive him of benefits. He was in a desperate financial situation at the time and lost sleep and worried constantly about what the government was accusing him of and how he was going to make ends meet.

### ii.    David Sherwood Johnson

57.    David Sherwood Johnson worked as a licensed pharmacist; he became unemployed in or around February 2020. Mr. Johnson applied for unemployment benefits from

COMPLAINT - 19

ESD and was found to be eligible for Pandemic Unemployment Assistance in an initial monetary determination letter dated April 29, 2020. ESD later sent Mr. Johnson one or more monetary determinations reflecting that he could claim Pandemic Emergency Unemployment Compensation benefits. Mr. Johnson claimed and was paid weekly benefits in 2020 and thereafter.

58.    ESD sent Mr. Johnson a letter titled Potential New Claim on June 14, 2021. It said that ESD was denying his unemployment benefits from November 8, 2020 to November 20, 2021. The letter only explained that he was no longer eligible for PUA or PEUC benefits "because you are eligible for a new unemployment claim." The letter suggested that Mr. Johnson might be liable to repay benefits he received. Mr. Johnson appealed the Potential New Claim letter.

59.    The Office of Administrative Hearings ultimately held on September 16, 2021 that the Potential New Claim letter he had received was "deficient," in that it failed to provide the claimant due process of law because it "fails to give the undersigned or the parties adequate notice of the basis for the Department's decision to deny, reduce, or re-evaluate benefits." Any denial of benefits reflected in the Potential New Claim letter was vacated by OAH. On information and belief, this OAH decision was in substance a form order issued in numerous other appeal cases concerning ESD's Potential New Claim letter.

60.    Later, ESD admitted in a September 29, 2021 e-mail message to Mr. Johnson that as ESD reviewed a potential new claim issue on his unemployment claim, "our computer system may have created an overpayment by mistake."

61.    ESD sent Mr. Johnson a letter titled Re Evaluate Claim dated November 17, 2021. The determination letter informed him that "We re-evaluated your unemployment benefits starting Mar 29 2020. This update was due to a change in at least one of the items below:

- "Determination of a new issue.
- Redetermination of an existing issue.
- Determination or redetermination of a monetary decision.
- An update to your weekly claim deductions.

COMPLAINT - 20

Smith & Dietrich Law Offices PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506
Tel. (360) 915-6952

1    • Processing of an appeal decision."

2    The determination letter said that Mr. Johnson "might owe us $284.00 as a result of this decision.

3    We paid you too much. This is called an overpayment."

4        62.    Attached to the November 17 redetermination letter was a table titled

5    Overpayment Details. The table claimed that ESD had overpaid Mr. Johnson $1,395 in benefits

6    between April 4-10, 2021, and from May 16-29, 2021. It said none of the alleged overpayment

7    related to allegations of fraud. ESD's letter alleged that Mr. Johnson was denied for "multiple

8    reasons" during these weeks, though none of the reasons was identified. Mr. Johnson timely

9    appealed this determination letter.

10        63.    Mr. Johnson was damaged by ESD's unlawful June 14, 2021 and November 17,

11   2021 redeterminations and related overpayment assessments. He was forced to spend time

12   responding to the Department's baseless notice and arbitrary decision to deprive him of

13   unemployment benefits, including by having to appeal in writing; communicate with ESD in an

14   effort to forestall the baseless seizure of his benefits while he remained unemployed and

15   dependent on meager ESD-administered benefits for income; and spend time and his cellular

16   telephone's battery, minutes, and data on internet access to dispute the baseless determination

17   notice.

18        64.    For months, Mr. Johnson suffered emotionally from stress, anxiety, and

19   humiliation because he could identify no basis for the government's above decisions to deprive

20   him of benefits. He was in a desperate financial situation at the time and lost sleep and worried

21   constantly about what the government was accusing him of and how he was going to make ends

22   meet.

23   **iii.    Elizabeth Ecklund**

24        65.    Elizabeth Ecklund is a registered nurse; she became unemployed in March 2020

25   and applied for unemployment benefits. Ms. Ecklund was found to be monetarily eligible for

26   benefits and received a monetary determination letter from ESD dated March 30, 2020 which

COMPLAINT - 21

was substantially similar to that ESD sent to Plaintiff Sterling. She later received a monetary determination reflecting her eligibility for PUA benefits dated July 18, 2020.

66.    Ms. Ecklund filed various weekly claims for unemployment benefits starting in 2020. She was paid unemployment insurance (UI) benefits in several weeks. Ms. Ecklund was not paid benefits for certain weeks in which she filed a claim, however; for example, in September 2020 and thereafter, she filed weekly claims that were not paid despite no explanation or appealable denial decision from ESD.

67.    Again, in January 2021 and continuing until April 2021, several of Ms. Ecklund's weekly claims were not paid. Ms. Ecklund did not receive an explanation or appealable decision denying her unemployment benefits at the time. Ms. Ecklund received in April 2021 a back-pay award from ESD including certain, but not all, of the weeks of unemployment benefits she claimed starting in January 2021.

68.    Ms. Ecklund received a letter from ESD titled "Separation from a Job" dated April 29, 2021. The letter explained for the first time that ESD had denied her benefits starting September 6, 2020 on the basis that her job separation around that date disqualified her from benefits. Ms. Ecklund timely appealed the decision. The decision was later reversed.

69.    Later, on February 18, 2022, ESD sent Ms. Ecklund a letter titled "Incomplete employer information." The letter told her that ESD denied her benefits "from Mar [*sic*] 15 2020 to Mar [*sic*] 13 2021." The letter alleged that ESD asked Ms. Ecklund to provide information about a past employer and that she did not respond. It informed her she did not qualify for unemployment benefits until she gave ESD the information.

70.    The February 18 letter also informed Ms. Ecklund ESD was assessing an overpayment against her. It stated that she owed $6,320.00 as a result of ESD's decision and that she was "at fault" for the overpayment without further explanation. The letter did not claim that Ms. Ecklund had engaged in fraud, misrepresentation, or non-disclosure.

COMPLAINT - 22

**Smith & Dietrich Law Offices PLLC**
3905 Martin Way E, Suite F
Olympia, WA 98506
Tel. (360) 915-6952

71.    ESD's February 18 letter included an overpayment details table. The table reflected that ESD believed Ms. Ecklund had received benefits she was not entitled to by law during the weeks of May 3-June 27, 2020. Ms. Ecklund appealed the decision.

72.    ESD sent another determination letter to Ms. Ecklund dated March 15, 2022. This letter informed her that ESD denied her benefits starting January 17, 2021 on the basis she separated from an employer around that time who "said [she] quit." The letter did not allege that Ms. Ecklund had engaged in fraud, misrepresentation, or non-disclosure.

73.    Ms. Ecklund has suffered physical symptoms related to stress and anxiety as a result of Defendant's actions and the resulting communications Ms. Ecklund received from ESD and has sought medical attention for the same. She worries that she will be subjected in the future to additional untimely decisions reversing ESD determinations awarding her benefits, despite the putative legal protections against such redeterminations. She has been inconvenienced and suffered humiliation due to having to repeatedly litigate appeals of wrongful ESD decisions attributable to the acts and omissions of Defendant recited in this Complaint.

**iv.    Robert Erickson**

74.    Robert Erickson worked as a graphic designer in Washington from 2017 to 2020. He became unemployed in approximately June 2020. Mr. Erickson applied unemployment benefits and was found to be eligible by ESD. He was paid benefits starting in 2020.

75.    ESD sent Mr. Erickson a Potential New Claim letter dated September 2, 2021 which was substantially similar to that ESD sent to Plaintiff Johnson, as described above. In this letter, ESD told Mr. Erickson that he was being retroactively denied unemployment benefits starting March 14, 2021 on the basis that he had not filed a new application for unemployment benefits. ESD accordingly assumed that Mr. Erickson was no longer eligible for PEUC benefits. It claimed Mr. Erickson owed $976 as a result of the decision and that the obligation could not be waived because he was "at fault." There was no allegation of fraud, misrepresentation, or non-disclosure included. Mr. Erickson filed a timely appeal.

COMPLAINT - 23

76.     An enclosure with the letter summarized the overpayment details the state alleged Mr. Erickson owed. Weekly benefit payments from March 14 to April 17 2020 were listed in the total amount of $976.

77.     Mr. Erickson was damaged by ESD's unlawful September 2, 2021 redetermination and related overpayment assessment. He was forced to spend time responding to the Department's baseless notice and arbitrary decision to deprive him of unemployment benefits, including by having to appeal in writing; communicate with ESD in an effort to forestall the baseless seizure of his benefits; and spend time and his cellular telephone's battery, minutes, and data on internet access to dispute the baseless determination notice.

78.     For months, Mr. Erickson suffered emotionally from stress, anxiety, and humiliation because he could identify no basis for the government's above decision to deprive him of benefits. He was in a difficult financial situation and lost sleep and worried constantly about what the government was accusing him of and how he was going to make ends meet.

**v.      Continuing threat of deprivation of Plaintiffs' legally protected interests**

79.     As a result of Defendant's actions and omissions, unemployment claimants including Plaintiffs Sterling, Johnson, Ecklund, and Erickson and others similarly situated face an imminent threat of deprivation of their federal rights and their constitutionally protected property interests and lack an adequate remedy at law. Unless this Court enjoins Defendant from the ongoing unlawful practices described in this Complaint, ESD will likely continue to dun Plaintiffs with demands to repay overpayments of benefits lacking factual and legal explanations for the decision, and will likely seek to collect on those assessments. Defendant will continue to cause Plaintiffs to receive untimely redeterminations of their entitlement to benefits long after ESD's determinations awarding Plaintiffs weeks of unemployment benefits have become final.

80.     Defendant knew or should have known that she was causing unlawful unemployment determinations to be issued to members of the public including Plaintiffs Sterling, Johnson, Ecklund, and Erickson through the extensively used form letter "Re Evaluate

COMPLAINT - 24

**Smith & Dietrich Law Offices PLLC**
3905 Martin Way E, Suite F
Olympia, WA 98506
Tel. (360) 915-6952

Claim" and "Potential New Claim" determinations, and through untimely redeterminations that violated procedural protections. Yet Defendant continued to cause those determinations to be issued or caused the underlying Department position to be maintained unless it was overturned by an outside authority such as the Washington Office of Administrative Hearings.

81.    Plaintiffs are suffering irreparable injury from Defendant's efforts to deprive them of entitlements to benefits without due process of law and will continue to suffer irreparable injury until the threat of Defendant repeating her unlawful actions is lifted.

### c.    Class Action Allegations

82.    Plaintiffs bring this action on behalf of themselves and on behalf of classes of similarly situated current and former ESD unemployment benefits claimants including the following:

### i.    <u>Untimely Redeterminations Class</u>

83.    All Washington residents to whom ESD issued a redetermination during the three years preceding the date this Complaint was filed which: 1) retroactively denied the claimant unemployment benefits after ESD had determined the claimant was entitled to the benefits; 2) was issued more than thirty days after ESD's determination allowing the Claimant the benefits in question; and 3) did not allege the claimant committed fraud, misrepresentation, or non-disclosure.

### ii.    <u>Deficient Denial Notice Class</u>

84.    All Washington residents to whom ESD issued a determination letter denying the claimant's benefits or imposing an overpayment assessment during the three years preceding the date this Complaint was filed, which notice failed to state the factual or legal basis for the ESD decision.

//

COMPLAINT - 25

**Smith & Dietrich Law Offices PLLC**
3905 Martin Way E, Suite F
Olympia, WA 98506
Tel. (360) 915-6952

### iii.    Allegations as to All the Alleged Classes

85.    Excluded from the Class are any officers or directors of the Employment Security Department, any judge assigned to the case, any employees assigned to work on the case, and all employees of the law firms representing Plaintiffs and the Class.

86.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence that would be used to prove those elements in individual actions alleging the same claims.

87.    Numerosity (Fed. R. Civ. P. 23(a)(1))—The members of the Class are so numerous that joinder of all members would be impracticable. Plaintiffs' class action allegations implicate routine business practices of Defendant and ESD during a period when a historically large volume of unemployment claims were affected by the conduct alleged above. While the exact number of Class members is unknown at this time, it is reasonable to assume the Class includes hundreds if not thousands of members.

88.    Commonality and Predominance (Fed. R. Civ. P. 23(a)(2) and 23(b)(3))—The action involves common questions of law and fact. Those common questions of law or fact predominate over questions that may affect only individual Class members. The common issues arising from Defendant's conduct predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy. The questions of law and fact common to Plaintiffs and the Class members include, among others, the following:

### 1.    Untimely Redeterminations Class

- Whether class members applied for and were awarded unemployment benefits by ESD;

- Whether Defendant engaged in a common course of retroactively denying class members' entitlement to unemployment benefits over thirty days after the benefits in question were awarded to the claimant;

COMPLAINT - 26

- Whether Defendant engaged in a common course of redetermining claimants' entitlement to unemployment benefits in the absence of evidence of fraud, misrepresentation, or non-disclosure by the claimant;

- Whether Defendant engaged in a common course of issuing overpayment notices to class members related to the untimely redetermination of their benefits awards;

- Whether untimely redetermination notices issued by reason of the actions and omissions of Defendant violated RCW 50.20.160(3);

- Whether untimely redetermination notices issued by reason of the actions and omissions of Defendant violated the right to payment "when due" under the Social Security Act, 42 U.S.C. § 503(a)(1);

- Whether untimely redetermination notices issued by reason of the actions and omissions of Defendant violated claimants' right to due process of law under the United States Constitution;

- Whether injunctive relief is appropriate to remedy Defendant's actions and omissions; and

- The nature and extent of Class-wide injury and the measure of compensation for such injury.

2.    **Deficient Denial Letters Class**

- Whether class members applied for and were awarded unemployment benefits by ESD;

- Whether Defendant engaged in a common course of issuing retroactive benefits denials to class members that failed to explain the factual and legal basis for the decision;

- Whether Defendant engaged in a common course of issuing letters substantially resembling the Re Evaluate Claim and Potential New Claim letters to class members;

COMPLAINT - 27

- Whether Defendant engaged in a common course of including overpayment assessments with letters substantially resembling the Re Evaluate Claim and Potential New Claim letters and issuing the same to class members;

- Whether Defendant's actions caused class members to be denied benefits or assessed for overpayments without providing an explanation of the factual or legal basis for the ESD decision;

- Whether Defendant's actions caused class members to be denied benefits and/or assessed for overpayments in violation of claimants' right to a fair hearing under the Social Security Act, 42 U.S.C. § 503(a)(3);

- Whether Defendant's actions caused class members to be denied benefits and/or assessed for overpayments in violation of claimants' rights to due process of law under the United States Constitution;

- Whether injunctive relief is appropriate to remedy Defendant's actions and omissions; and

- The nature and extent of Class-wide injury and the measure of compensation for such injury.

89.    Typicality (Fed. R. Civ. P. 23(a)(3))—Plaintiffs' claims are typical of the claims of the Class. The evidence and the legal theories regarding Defendant's alleged wrongful conduct are substantially the same for Plaintiffs and the Class members, as the relevant form correspondence from ESD and redetermination and overpayment assessment practices are common among Class members.

90.    Adequacy (Fed. R. Civ. P. 23(a)(4))—Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained competent counsel experienced in complex and class action litigation. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests that are contrary to, or that conflict with those of the Class.

COMPLAINT - 28

91.     Superiority (Fed. R. Civ. P. 23(b)(3))—Plaintiffs and the members of the Class have suffered and will continue to suffer harm and damages as a result of Defendant's wrongful conduct. Absent a class action however, most members of the Class would likely find the cost of litigating their claims prohibitive. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters wrongful activities. There will be no significant difficulty in the management of this case as a class action. The members of the Class are readily identifiable from the Employment Security Department's own records.

## V. CLAIMS

### FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983: Due Process of Law—United States Constitution, XIV Amdt.)

92.     Plaintiffs incorporate by reference all preceding paragraphs as if fully restated here.

93.     Plaintiffs hereby assert claims under 42 U.S.C. § 1983 and the Fourteenth Amendment's Due Process Clause against Defendant.

94.     Defendant is a "person" acting under color of state law within the meaning of 42 U.S.C. § 1983. The Washington state laws at issue are those through which Defendant administers the Washington unemployment benefits program. *See, e.g.*, RCW 50.08.010; RCW 50.12.020.

95.     Defendant has subjected, or caused to be subjected, Plaintiffs to the deprivation of rights secured by the Constitution of the United States within the meaning of 42 U.S.C. § 1983.

96.     Plaintiffs have a constitutionally protected property interest in the benefits awarded to them by the Washington Employment Security Department.

COMPLAINT - 29

**Smith & Dietrich Law Offices PLLC**
3905 Martin Way E, Suite F
Olympia, WA 98506
Tel. (360) 915-6952

97.     Plaintiffs meet the statutory and regulatory criteria entitling them to regular unemployment compensation benefits, and/or benefits under the PUA, PEUC, and FPUC programs, in the amounts and for the periods set forth in paragraphs 1-91 above.

98.     Defendant has a duty under the Due Process Clause to provide affected beneficiaries with adequate notice of the reasons for denying or terminating their unemployment benefits. Defendant also has a duty under the Due Process Clause to provide affected beneficiaries with adequate notice of procedures through which they can contest denial or termination of their benefits. Defendant has violated, and is violating, those duties with respect to Plaintiffs.

99.     Defendant has, through her personal involvement and through her supervision of subordinates, instituted or ratified the policy, custom, or practice of Washington's Employment Security Department denying or terminating beneficiaries' benefits without providing them with adequate notice of the reasons for the denial or termination as required by the Due Process Clause. Among other things, Defendant knew or should have known that she has caused the repeated denial and/or termination, and is continuing to cause the denial and/or termination, of beneficiaries' benefits without adequate notice, thereby risking violation of their Due Process rights.

100.     Defendant has a duty under the Due Process Clause to provide affected beneficiaries with adequate notice of the reasons for seizing their unemployment benefits through offsets of alleged debts based on alleged overpayments to them of other benefits.

101.     Defendant has, through her personal involvement and through her supervision of subordinates, instituted or ratified the policy, custom, or practice of Washington's Employment Security Department of seizing beneficiaries' unemployment benefits, through offsets based upon alleged overpayments, without providing them with adequate notice of the basis for the offsets as required by the Due Process clause. Among other things, Defendant has caused ESD to seize benefits from claimants based upon overpayment assessments that do not explain the

COMPLAINT - 30

Smith & Dietrich Law Offices PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506
Tel. (360) 915-6952

rationale or facts concerning the claimed overpayment underlying the seizure. In addition, Defendant knew or should have known that she has caused the repeated seizure, and is continuing to cause the seizure, of beneficiaries' benefits through offset without adequate notice, thereby risking violation of their Due Process rights.

102.    Defendant has, through her personal involvement and through her supervision of subordinates, violated the Due Process rights of Plaintiff Sterling and others by causing ESD to seizing their benefits through offsets without providing them with adequate notice of the basis for the offsets.

103.    Defendant has a duty under the Due Process Clause to give claimants adequate notice of the circumstances under which claimants' benefits entitlements can be redetermined to denials of benefits, and their past benefits payments converted into overpayment liabilities.

104.    Defendant has, through her personal involvement and through her supervision of subordinates, instituted or ratified the policy, custom, or practice of Washington's Employment Security Department to issue to claimants retroactive decisions denying benefits previously awarded and/or assessing overpayments for past benefits contrary to the limitations on Defendant's jurisdiction to issue such retroactive decisions under Washington law. RCW 50.20.160(3).

105.    Defendant violated Plaintiffs' Due Process rights by causing ESD to retroactively determine Plaintiffs' entitlement to their benefits despite an absence of jurisdiction to issue those redeterminations.

106.    As a direct consequence of Defendant's acts and threatened acts, Plaintiffs suffered and will seek compensation at trial for their actual damages, nominal damages, and the fees and costs of this action, among other amounts listed below.

107.    Plaintiffs will continue to suffer irreparable injury until Defendant's unlawful and/or unconstitutional actions are enjoined and declared to be unlawful and/or unconstitutional. Plaintiffs' past experience with their unemployment claims and Defendant's past actions and

COMPLAINT - 31

1  inactions establish a reasonable expectation that Plaintiffs will again be subjected to the
2  violations described above in the future unless this Court enjoins such actions and inactions
3  prospectively.

4

5

**SECOND CAUSE OF ACTION**
**(42 U.S.C. § 1983: Social Security Act right to opportunity for a fair hearing)**

6      108.    Plaintiffs reallege and incorporate by reference the allegations in Paragraphs 1
7  through 91 of this Complaint.

8      109.    Plaintiffs hereby assert claims under 42 U.S.C. § 1983 and the Social Security
9  Act, 42 U.S.C. § 503, against Defendant.

10     110.    Defendant is a "person" acting under color of state law within the meaning of 42
11  U.S.C. § 1983. The Washington state laws at issue are those through which Defendant
12  administers the Washington unemployment benefits program. *See, e.g.*, RCW 50.08.010; RCW
13  50.12.020.

14     111.    Defendant has subjected, or caused to be subjected, Plaintiffs to the deprivation
15  of rights secured by the laws of the United States within the meaning of 42 U.S.C. § 1983.

16     112.    Defendant violated, and is violating, Plaintiffs' individually enforceable rights
17  under 42 U.S.C. § 503(a)(3) requiring that they have an opportunity for a fair hearing through
18  which they can challenge the denial, termination or offset-seizure of unemployment benefits.

19     113.    Plaintiffs meet the statutory and regulatory criteria entitling them to regular
20  unemployment compensation benefits and/or benefits under the PUA, PEUC, and FPUC
21  programs, in the amounts and for the periods set forth in paragraphs 1-91, above.

22     114.    Defendant has a duty under the "fair hearing" requirement of 42 U.S.C. §
23  503(a)(3) to provide affected beneficiaries with adequate notice of the reasons for denying or
24  terminating their unemployment benefits.

25     115.    Defendant has, through her personal involvement and through her supervision of
26  subordinates, instituted or ratified the policy, custom, or practice of Washington's Employment

COMPLAINT - 32

Security Department of denying or terminating beneficiaries' benefits without providing them with adequate notice of the reasons for the denial or termination as required by 42 U.S.C. § 503(a)(3). Among other things, Defendant knew or should have known that she has repeatedly denied and/or terminated, and is continuing to deny and/or terminate, beneficiaries' benefits without such notice, thereby risking violation of their rights under 42 U.S.C. § 503(a)(3).

116.    Defendant has violated the rights of Plaintiffs under 42 U.S.C. § 503(a)(3) by causing the denial or attempted recoupment of their benefits without providing them with adequate notice of the adverse action.

117.    Defendant has a duty under 42 U.S.C. § 503(a)(3) to provide affected beneficiaries with adequate notice of the reasons for seizing their unemployment benefits through offsets of alleged debts based on alleged overpayments to them of other benefits. Defendant also has a duty under 42 U.S.C. § 503(a)(3) to provide affected beneficiaries with adequate notice of procedures through which they can contest such seizures of their benefits.

118.    Defendant has, through her personal involvement and through her supervision of subordinates, instituted or ratified the policy, custom, or practice of Washington's Employment Security Department of seizing beneficiaries' unemployment benefits, through offsets based upon alleged overpayments, without providing them with adequate notice of the basis for the offsets as required by 42 U.S.C. § 503(a)(3). Among other things, Defendant knew or should have known that she has repeatedly caused the seizure, and is continuing to cause the seizure, of beneficiaries' benefits through offsets without such notice, thereby risking violation of their rights under 42 U.S.C. § 503(a)(3).

119.    Defendant has violated the rights of Plaintiffs under 42 U.S.C. § 503(a)(3) by seizing their benefits through offsets without providing them with adequate notice of the basis for the offsets.

120.    Defendant has, through her personal involvement and through her supervision of subordinates, violated Plaintiffs' federal statutory rights by causing ESD to issue decisions

**Smith & Dietrich Law Offices PLLC**
3905 Martin Way E, Suite F
Olympia, WA 98506
Tel. (360) 915-6952

denying benefits and/or assessing overpayments to claimants in the absence of adequate factual or legal reasons for ESD's action.

121.    As a direct consequence of Defendant's acts and threatened acts, Plaintiffs suffered and will seek compensation at trial for their actual damages, nominal damages, and the fees and costs of this action, among other amounts listed below.

122.    Plaintiffs will continue to suffer irreparable injury until Defendant's unlawful and/or unconstitutional actions are enjoined and declared to be unlawful and/or unconstitutional. Plaintiffs' past employment histories and Defendant's past actions and inactions establish a reasonable expectation that Plaintiffs will again be subjected to the violations described above in the future unless this Court enjoins such actions and inactions prospectively.

**THIRD CAUSE OF ACTION**
**(42 U.S.C. § 1983: Social Security Act right to payment when due)**

123.    Plaintiffs reallege and incorporate by reference the allegations in Paragraphs 1 through 91 of this Complaint.

124.    Plaintiffs hereby assert claims under 42 U.S.C. § 1983 and the Social Security Act, 42 U.S.C. § 503, against Defendant.

125.    Defendant is a "person" acting under color of state law within the meaning of 42 U.S.C. § 1983. The Washington state laws at issue are those through which Defendant administers the Washington unemployment benefits program. *See, e.g.*, RCW 50.08.010; RCW 50.12.020.

126.    Defendant has subjected, or caused to be subjected, Plaintiffs to the deprivation of rights secured by the laws of the United States within the meaning of 42 U.S.C. § 1983.

127.    Defendant violated, and is violating, Plaintiffs' individually enforceable rights under 42 U.S.C. § 503(a)(1) entitling them to timely determinations of unemployment benefits and timely payment thereon.

COMPLAINT - 34

128.    Plaintiffs meet the statutory and regulatory criteria entitling them to regular unemployment compensation benefits and/or benefits under the PUA, PEUC, and FPUC programs, in the amounts and for the periods set forth in paragraphs 1-91 above.

129.    Defendant has a duty under 42 U.S.C. § 503(a)(1) to make timely determinations of unemployment benefits and timely payments thereon.

130.    Defendant has, through her personal involvement and through her supervision of subordinates, instituted or ratified the policy, custom, or practice of Washington's Employment Security Department of violating the foregoing duty by failing to make timely determinations of unemployment benefits and timely payments thereon. Among other things, Defendant knew or should have known that she has caused ESD to repeatedly make untimely determinations and untimely overpayment demands, thereby risking violations of beneficiaries' rights under 42 U.S.C. § 503(a)(1).

131.    Defendant has, through her personal involvement and through her supervision of subordinates, violated the rights of Plaintiffs under 42 U.S.C. § 503(a)(1) by failing to make timely determinations on, and timely payments regarding, their unemployment benefit claims. Moreover, Defendant has caused ESD to issue untimely redetermination notices seeking to deny claimants benefits retroactively in an absence of jurisdiction to make those determinations. RCW 50.20.160(3).

132.    As a direct consequence of Defendant's acts and threatened acts, Plaintiffs suffered and will seek compensation at trial for their actual damages, nominal damages, and the fees and costs of this action, among other amounts listed below.

133.    Plaintiffs will continue to suffer irreparable injury until Defendant's unlawful and/or unconstitutional actions are enjoined and declared to be unlawful and/or unconstitutional. Plaintiffs' past employment histories and Defendant's past actions and inactions establish a reasonable expectation that Plaintiffs will again be subjected to the violations described above in the future unless this Court enjoins such actions and inactions prospectively.

COMPLAINT - 35

# VI. PRAYER FOR RELIEF

134.    Based upon the above allegations, Plaintiffs respectfully request that this Court enter judgment in their favor against Defendant, and award Plaintiffs and the Classes relief stated below.

## A.    Injunctive relief

Plaintiffs request entry of a permanent injunction against Defendant in her official capacity that:

- Prohibits Defendant from allowing ESD to issue or enforce any decision denying unemployment beneficiaries' benefits in the future where the decision lacked a specific factual and legal basis for the action;

- Prohibits Defendant from allowing ESD to issue or enforce any decision assessing an overpayment of benefits to any unemployment beneficiary in the future where the decision lacked a specific factual and legal basis for the action;

- Prohibits Defendant from allowing ESD to reduce unemployment beneficiaries' benefits, through offsets of alleged overpayments, in the future where the decision lacked a specific factual and legal basis for the action;

- Requires Defendant to pay Plaintiffs any unemployment benefit amounts offset by Defendant without adequate notice;

- Requires Defendant to issue timely determinations of unemployment benefits and timely payments thereon; and

- Prohibits Defendant from allowing ESD to issue or enforce any decision retroactively denying any claimant benefits (or assessing any overpayment) over thirty days after payment of any given week of unemployment benefits to the claimant in the absence of evidence of fraud, misrepresentation, or non-disclosure of material facts in violation of RCW 50.20.160(3).

//

COMPLAINT - 36

**B.** **Declaratory relief**

135.   Plaintiffs request entry of a declaratory judgment against Defendant in her official capacity declaring that:

- Defendant has violated her duty under the Due Process Clause of the Fourteenth Amendment to provide adequate notice of the reasons for denying, terminating or reducing unemployment beneficiaries' benefits, including through offsets;
- Defendant has violated her duty under 42 U.S.C § 503 to provide adequate notice of the reasons for denying, terminating or reducing unemployment beneficiaries' benefits, including through offset;
- Defendant has violated her duty under 42 U.S.C. § 503 to make timely determinations of unemployment benefits and timely payment thereon; and
- Defendant has violated her duty under 42 U.S.C. § 503 to provide claimants with an opportunity for a fair hearing.

**C.** **Damages**

136.   Plaintiffs and Class members request that this Court award them their actual damages, exemplary damages, and nominal damages against Defendant in her personal capacity for Defendant's violation of their rights under the U.S. Constitution and federal law, and award Plaintiffs their reasonable attorney fees and costs of this suit under 42 U.S.C. § 1988 and as provided by law and equity.

**D.** **Additional relief**

137.   Plaintiffs ask that the Court grant such further relief as the Court deems just and proper.

//

COMPLAINT - 37

1

## VII.    JURY TRIAL DEMAND

2      138.    Plaintiffs request a jury trial as to all claims in this Complaint so triable.

3

4      Respectfully signed and dated April 14, 2022.

5

6                                          SMITH & DIETRICH LAW OFFICES PLLC

7

8                                          /s/ Walter M. Smith
                                           Walter M. Smith (WSBA No. 46695)
9                                          walter@smithdietrich.com
                                           Steve E. Dietrich (WSBA No. 21897)
10                                         steved@smithdietrich.com
                                           SMITH & DIETRICH LAW OFFICES PLLC
11                                         3905 Martin Way E, Suite F
                                           Olympia, WA 98506
12                                         Phone: (360) 915-6952
                                           *Attorneys for Plaintiffs*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT - 38