The Honorable David G. Estudillo

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAMARIO RASHEED STERLING,
DAVID SHERWOOD JOHNSON,
ELIZABETH ECKLUND, ROBERT
ERICKSON, LAUREN COLAS,
ALEXANDER JUAREZ, and LORI
ALEXANDER, on behalf of themselves
and all others similarly situated,

Plaintiffs,

vs.

CAMI L. FEEK, Commissioner,
Washington State Employment Security
Department, in her individual capacity, and
in her official capacity,

Defendant.

No. 3:22-cv-05250−DGE

**PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

**Note on Motion Calendar: July 22, 2022**

# TABLE OF CONTENTS

**Page No.**

I.   INTRODUCTION ....................................................................................... 1

II.  FACTUAL AND LEGAL BACKGROUND ............................................. 2

    A.   The Department utilizes an automated computer program to redetermine eligibility and assess overpayments. ................................................. 2

    B.   Overpayment notices deprive claimants of property and assign claimants liability. .............................................................................. 3

    C.   Plaintiffs received automated redeterminations and overpayment assessments. ...................................................................................... 4

    D.   Ms. Feek was personally involved in administering the UTAB system. .............. 5

III. LEGAL ARGUMENT ............................................................................... 6

    A.   Plaintiffs have plausibly alleged a § 1983 claim based on the procedural due process requirements of the 14th Amendment. ................................... 7

        1.   Plaintiffs allege deprivation of a property interest. ................................ 7

        2.   A post-deprivation appeal does not cure the lack of pre-deprivation notice and hearing. .............................................. 10

    B.   Qualified immunity does not bar Plaintiffs' claims. ...................................... 13

    C.   Plaintiffs have alleged adequate facts against Defendant individually. ............. 15

    D.   The full range of Section 1983 damages are available to Plaintiffs ................. 17

    E.   Plaintiff Sterling's claims accrued under Defendant's leadership of ESD. ....... 18

    F.   Plaintiffs properly pled their § 1983 claim based on the "when due" requirement in 42 U.S.C. § 503(a)(1). ......................................... 19

        1.   For over fifty years, courts have recognized lawsuits under § 503(a)(1). ....................................................................... 19

        2.   Plaintiffs' § 503(a)(1) claims apply to Defendant's invalid recoupment procedures. ....................................................... 21

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS - i
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

1

3.   Plaintiffs' § 503(a)(1) claims are not moot............................................ 22

IV.   CONCLUSION ..................................................................................................24

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS - ii
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

Page No.

*Armstrong v. Reynolds,*
    22 F.4th 1058 (9th Cir. 2022)........................................................................... 7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................... 6

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris,*
    729 F.3d 937 (9th Cir. 2013)........................................................................ 6

*Baynes v. Cleland,*
    799 F.3d 600 (6th Cir. 2015)) ..................................................................... 15

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................................... 6

*Blackford v. Kansas,*
    938 F. Supp. 739 (D. Kan. 1996) ................................................................ 11

*Blankenship v. Secretary of HEW,*
    587 F.2d 329 (6th Cir. 1978).................................................................23, 24

*Blount v. Smith,*
    440 F. Supp. 528 (M. D. Penn. 1977)......................................................... 21

*Brewer v. Cantrell,*
    622 F. Supp. 1320 (W.D. Va. 1985)......................................................19, 21

*Cahoo v. Fast Enterprises LLC,*
    528 F. Supp. 3d 719 (E.D. Mich. 2021) ..................................................10, 16

*Cahoo v. SAS Analytics Inc.,*
    912 F.3d 887 (6th Cir. 2019)................................................................*passim*

*Cal. Dep't of Hum. Res. Dev. v. Java,*
    402 U.S. 121 (1971) ...........................................................................*passim*

*Carey v. Piphus,*
    435 U.S. 247 (1978) .............................................................................10, 18

*Carpenter-Barker v. Ohio,*
    187 F. Supp. 3d 881 (S.D. Ohio 2016) ....................................................... 12

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS - iii
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

*Chaudhry v. City of Los Angeles*,
    751 F.3d 1096 (9th Cir. 2014)......................................................................... 18

*Cleveland Bd. of Educ. v. Loudermill*,
    470 U.S. 532 (1985) .................................................................................8, 10

*Connecticut v. Doehr*,
    501 U.S. 1 (1991) .......................................................................................8, 9

*Daniels v. Commonwealth*,
    465 A.2d 726 (Pa. 1983) ...........................................................................11, 12

*Dennis v. Higgins*,
    498 U.S. 439 (1991) .................................................................................... 17

*Disability Rights Montana, Inc. v. Batista*,
    930 F.3d 1090 (9th Cir. 2019)........................................................................ 6

*East v. Pryor*,
    89 F.R.D. 75 (E.D. Ark. 1981) ..................................................................... 23

*Eunice v. Ellzey*,
    No. 2:21-cv-2010-BHH, 2022 WL 2374165 (D.S.C Mar. 10, 2022)......................20, 21

*Farina v. Metropolitan Transportation Authority*,
    409 F.3d 173 (S.D.N.Y. 2019) ..................................................................... 12

*Gean v. Hattaway*,
    330 F.3d 758 (6th Cir. 2003)......................................................................... 12

*Goldberg v. Kelly*,
    397 U.S. 254 (1970) .............................................................................2, 8, 11

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982) .................................................................................... 15

*Hope v. Pelzer*,
    536 U.S. 730 (2002) .................................................................................... 15

*Indiana Employment Security Division v. Burney*,
    409 U.S. 540 (1973) .................................................................................... 23

*Jenkins v. Bowling*,
    691 F.2d 1225 (7th Cir. 1982)........................................................................20, 21

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS - iv
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

*Kelly v. Lopeman*,
    680 F. Supp. 1101 (S.D. Ohio 1987) .......................................................................... 24

*Kingdomware Tech. Inc. v. United States*,
    579 U.S. 162 (2016) .................................................................................................... 23

*Logan v. Zimmerman Brush Co.*,
    455 U.S. 422 (1982) .................................................................................................... 11

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ........................................................................................ 11, 12, 14

*McBain v. Behr Paint Corp.*,
    16-CV-07036-MEJ, 2017 WL 1208074 (N.D. Cal. Apr. 3, 2017) ................................ 5

*Mir v. Little Co. of Mary Hosp.*,
    844 F.2d 646 (9th Cir. 1988) ........................................................................................ 5

*Mullane v. Central Hanover Bank and Trust Co.*,
    339 U.S. 306 (1950) .................................................................................................... 14

*Mundell v. Board*,
    No. CIV.A. 05-CV-00585RE, 2007 WL 128805 (D. Colo. Jan. 12, 2007).................. 12

*Robertson v. Wegmann*,
    436 U.S. 584 (1978) .................................................................................................... 17

*Robins v. Meecham*,
    60 F.3d 1436 (9th Cir. 1995)........................................................................................ 16

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011)................................................................................15, 16

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
    592 F.3d 954 (9th Cir. 2010)........................................................................................ 5

*Washington Trucking Associations v. State*,
    188 Wn.2d 198 (2017).................................................................................................. 18

*Wheeler v. St. of Vt.*,
    335 F. Supp. 856 (D. Vt. 1971).................................................................................... 24

*Watkins v. City of Oakland*,
    145 F.3d 1087 (9th Cir. 1998)) .................................................................................... 16

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS - v
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

*Wilkinson v. Abrams,*
    627 F.2d 650 (3rd Cir. 1980) ................................................................. 24

*Zinermon v. Burch,*
    494 U.S. 113 (1990) ............................................................................. 11

## STATE STATUTES AND REGULATIONS

RCW 50.20.160(3) ................................................................................. 2, 22

RCW 50.20.190 ........................................................................................ 13

RCW 50.20.190(3) ...................................................................................... 9

RCW 50.20.190(6) ...................................................................................... 4

RCW 50.20.190(7)(b) .................................................................................. 4

RCW 50.24.115 ........................................................................................... 3

WAC 192-220-017 ....................................................................................... 9

WAC 192-230-100 ............................................................................. 3, 7, 9, 13

## FEDERAL RULES

42 U.S.C. § 503(a)(1) ......................................................................... *passim*

42 U.S.C. § 1983 ................................................................................ *passim*

## OTHER AUTHORITIES

Portia Wu, DOL UIPL No. 01-16
    (Oct. 1, 2015) ................................................................................... 10

Portia Wu, UIPL No. 01-16 Change 1 U.S. DEP'T OF LAB.
    (Jan. 13, 2017) ................................................................................. 11

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS - vi
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

## I.    INTRODUCTION

Defendant's assertions in the Motion to Dismiss are breathtaking in their extremity: she argues the government may seize property, without *pre-deprivation* notice or a hearing, and so long as there is a post-deprivation forum to appeal the deprivation, no constitutional harm occurs and victims may not subsequently challenge Defendant's unconstitutional conduct in court. Defendant is simply wrong. The law is abundantly clear that a constitutional harm giving rise to a claim for damages occurs when the government interferes with a property right without due process even if the plaintiff later recovers their property.

Defendant oversaw and required the usage of a computer program she knew was flawed that deprived unemployed individuals of benefits that were rightfully theirs. Defendant knew the UTAB software erroneously targeted unemployment claimants to "redetermine" their eligibility for benefits, and demanded these individuals repay benefits already received. She knew it auto-generated confusing notices that failed to apprise individuals of their rights—notices that Administrative Law Judges ("ALJs") of the Office of Administrative Hearings ("OAH") have repeatedly found to be unconstitutional. Many individuals receiving such notices failed to appeal or repaid benefits to which they were entitled. Others, including at least one named Plaintiff, had benefits seized during the appellate process. Rather than stop her illegal conduct, Defendant instead relies on the victims of this unconstitutional scheme to "catch" her errors in the appellate process. But *Defendant* is required by law to honor the civil rights of unemployment claimants.

This Court should deny Defendant's motion to dismiss and find that Plaintiffs have alleged sufficient facts in the Amended Complaint to state a claim on which relief can be granted under 42 U.S.C. § 1983 for deprivation of the constitutional right to due process and for violating 42 U.S.C. § 503. To the extent this Court finds any deficiencies in Plaintiffs' allegations, the Court should grant leave to amend the operative complaint to address the deficiencies and ensure Plaintiffs and thousands of other individuals who faced unconstitutional deprivations of their unemployment rights receive access to justice.

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS - 1
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

## II.    FACTUAL AND LEGAL BACKGROUND

The Employment Security Department ("ESD") deemed all Plaintiffs eligible for unemployment benefits. Dkt. #14 at ¶¶53, 62, 70-71, 79, 84-85, 88, 92. As a result, they had a vested property right in those benefits. *See Goldberg v. Kelly*, 397 U.S. 254, 262 (1970). Then, after allowing benefits to the Plaintiffs based on their eligibility, ESD, without notice, "redetermined" each Plaintiff's eligibility, declared them ineligible to receive certain past benefits, and assessed Plaintiffs for overpayments. Dkt. #14 at ¶¶1, 55, 66, 75, 80, 85, 88, 92. This action, performed automatically and repeatedly using a software program, deprived each Plaintiff of constitutionally protected property interests without a pre-deprivation hearing—often after the limited thirty-day period ESD has under RCW 50.20.160(3) to redetermine eligibility in the absence of fraud, misrepresentation, or non-disclosure. *Id.* at ¶¶1-2, 31, 36-37, 41-42, 47, 52-96.

**A.    The Department utilizes an automated computer program to redetermine eligibility and assess overpayments.**

To facilitate its unemployment program, in 2018, ESD created the Unemployment Tax and Benefits System ("UTAB"). Dkt. #14 at ¶41. UTAB is an automated computer program that stores data on claims, claimants, employers, and other information for managing and paying benefits. *Id.* ESD policies and practices require staff to use form correspondence generated through UTAB for communication with claimants. *Id.*

After an eligibility determination, ESD is entitled to redetermine eligibility and recoup overpaid benefits; however, eligibility redeterminations may occur only under narrow circumstances. Dkt. #14 at ¶31. Overpayments occur when a claimant was paid unemployment benefits in excess of the benefits they were entitled to receive. *Id.* at ¶33. In the absence of fraud, misrepresentation, or nondisclosure, ESD has only thirty days to redetermine eligibility for previous benefit payments. *Id.* at ¶31. Yet without regard to that requirement, ESD uses UTAB to make automatic redeterminations of claimant eligibility and automatic issuance of overpayment assessments. *Id.* at ¶42.

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS - 2
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

UTAB has several built-in defects that routinely lead to the deprivation of claimants' rights to benefits due to improper eligibility redeterminations and overpayment assessments. For example, UTAB generates vague messages, and ESD sends these messages to unemployment claimants. *Id.* at ¶¶42, 47. If claimants fail to respond to these vague messages, UTAB automatically redetermines claimants' eligibility and deems them ineligible. *Id.* This occurs without regard to suspicions of fraud, misrepresentation, or nondisclosure and without regard to whether thirty days have passed since eligibility was established. *Id.* at ¶¶42, 47, 56, 67, 75, 80, 89, 92. UTAB also issues overpayment assessments based solely on non-response-based redeterminations. *Id.* at ¶42. These assessments are poorly written and confusing, and claimants are unable to understand the factual or legal basis of ESD's decision. *Id.*

Redeterminations and overpayment assessments occur before claimants are notified, and claimants are not afforded a prior opportunity to contest the redetermination allegations. *Id.* Instead, a claimant must appeal the redetermination and assessment after-the-fact. *Id.* ALJs at OAH routinely overturn appealed redeterminations and overpayment assessments as legally deficient, but ESD continues to utilize UTAB to issue these decisions. *Id.* at ¶¶43, 46, 48, 50.

**B.    Overpayment notices deprive claimants of property and assign claimants liability.**

An overpayment assessment is the Department's determination that the recipient has received unemployment benefits to which they were not entitled. *Id.* at ¶33. Once an overpayment assessment is made, the Department—through its Commissioner—may institute a variety of collection efforts to recoup—or deprive—allegedly overpaid benefits. For example, the Commissioner may cease issuance of ongoing unemployment benefits or deduct (or "offset") the overpaid amount from benefits otherwise payable without any further notice to claimant. WAC 192-230-100. Defendant did just that against Plaintiff Sterling. Dkt. #14 at ¶58. The Commissioner may also obtain a civil judgment and remedies such as writs of execution or garnishment or a lien against real and personal property. RCW 50.24.115.

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS - 3
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

If the claimant fails to repay the overpayment or comply with repayment plan terms, the Commissioner is required to assess an interest penalty. RCW 50.20.190(6). She also must "engage in other detection and recovery of overpayment and collection activities." RCW 50.20.190(7)(b).

**C.     Plaintiffs received automated redeterminations and overpayment assessments.**

Because of UTAB, each Plaintiff received a redetermination of their eligibility informing them they were no longer eligible to keep certain benefits they had been awarded. Dkt. #14 at ¶¶55-56, 63, 66-67, 73-76, 80-81, 85-86, 88-89, 92. No Plaintiff received any notice from the Department before its redetermination that indicated the Department was considering redetermination of their benefits or assessment of an overpayment. *Id.* Instead, each Plaintiff received an automated assessment of overpayment. *Id.*

Each Plaintiff requested an appeal. *Id.* at ¶¶57, 67, 76, 80, 86, 90, 95. Plaintiffs who received an appeal decision prevailed summarily on legal grounds. Dkt. #14 at ¶¶59, 64, 86, 90, 95. Two Plaintiffs' overpayment determinations were vacated because an ALJ found the Plaintiffs failed to receive constitutionally adequate notice of the final overpayment decision. *Id.* at ¶¶59, 64. Three Plaintiffs had their overpayment determinations vacated on the grounds that the Department lacked jurisdiction to make the underlying redetermination due to the passage of time. *Id.* at ¶¶86, 90, 95. Two Plaintiffs are still waiting for their appeals to be heard. *See id.*, ¶¶76, 80.

Significant time elapsed between Plaintiffs' receipt of the overpayment assessments and appeal hearings or decisions before OAH. Plaintiff Johnson was required to wait three months before an ALJ *sua sponte* vacated his overpayment assessment without a hearing. Dkt. #14 at ¶¶63-64. Plaintiffs who received hearings had to wait several months for appeal orders. *See, e,g., id.* at ¶59. Plaintiff Erickson is still awaiting an appeal hearing for his September 2, 2021, overpayment assessment, and Plaintiff Ecklund is waiting for a hearing on her February 18, 2022, overpayment assessment and her March 15, 2022 redetermination decision. *See id.* at ¶¶76, 80.

ESD withheld thousands of dollars from Plaintiff Sterling as an "offset" from his continuing claim payments *Id.* at ¶58. Each Plaintiff suffered emotional distress and spent time

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS - 4
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

and money to have the overpayment assessments declared invalid. *Id.* at ¶¶61, 68-69, 78, 82-83, 87, 91, 96. These injuries are directly attributable to the Department's failure to provide the pre-decisional procedural protections and notices required by federal law. *Id.*

**D.    Ms. Feek was personally involved in administering the UTAB system.**

Cami Feek is the Commissioner of the Department. *Id.* at ¶11. Commissioner Feek exercised oversight and control over UTAB since 2018 when she became the Department's Deputy Commissioner responsible for its information technology services. *See* "Cami Feek," LinkedIn, https://www.linkedin.com/in/cami-feek-581275207 (last visited July 14, 2022).[1] She also served as the Department's acting Commissioner in 2018. *Id.* Since February 2021, Commissioner Feek has been the Commissioner of the Department. Dkt. #14 at ¶¶39-40.

Defendant has known of the systemic problems with UTAB and its damaging effects since before she became Commissioner because she has acted in agency leadership, and UTAB's overpayment and assessment process has injured tens of thousands of people and received widespread public attention.[2] *Id.* at ¶43. Defendant personally acknowledged the specific UTAB flaws at issue here in testimony to the Washington State Legislature. *Id.* at ¶¶43, 47. She also told the Legislature she had considered and rejected a moratorium on overpayment assessments to

---

[1] On a motion to dismiss, it is proper for the Court to take judicial notice of matters of public record outside the pleadings. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988). Courts may take judicial notice of LinkedIn profiles. *McBain v. Behr Paint Corp.*, 16-CV-07036-MEJ, 2017 WL 1208074, at *3 (N.D. Cal. Apr. 3, 2017).

[2] Courts take judicial notice of news articles presented to demonstrate what is in the public realm. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010). Plaintiffs provide citations to the following news articles to demonstrate Defendant was aware of allegations of inaccurate overpayment assessments: Editorial Board, *Tacoma woman, thousands more on hook to repay jobless benefits. State, fix your mess*, Tacoma News Tribune, Dec. 26, 2020, https://www.thenewstribune.com/opinion/editorials/article248081145.html; Associated Press, *Tens of Thousands in Washington may have to repay jobless benefits,* (Mar. 5, 2021), https://apnews.com/article/business-washington-coronavirus-pandemic-economy-5b99687735441352e42bd2f32d14e23e; Tony Black, *55,000 people may have to pay back portion of Washington unemployment benefits*, King5.com, (Mar. 6, 2021), https://www.king5.com/article/news/local/washington-state-unemployment-benefits-back-pay-pandemic/281-e919504e-9aae-4330-8ca3-1cb92c8996ad; Paul Roberts, *Overpayment Mess at Washington State's Unemployment Agency Gets Help from National Guard*, Seattle Times (Mar. 19, 2021), https://www.seattletimes.com/business/national-guard-to-help-washington-state-sort-through-thousands-of-unemployment-overpayment-notices/.

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS - 5
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

allow the Department to address the problems.[3] Commissioner Feek is aware that numerous invalid and unlawful Department redetermination letters and overpayment assessments continue to be issued, and she has ratified this conduct. *Id.* at ¶¶46, 49-51. Still, UTAB's automated redetermination and overpayment assessment continues. *Id.* at ¶51.

## III.    LEGAL ARGUMENT

On a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Disability Rights Montana, Inc. v. Batista*, 930 F.3d 1090, 1096-97 (9th Cir. 2019). To survive a motion to dismiss, a plaintiff must allege facts supporting a "plausible" claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Here, Plaintiffs' 39-page Amended Complaint (Dkt. #14) alleges sufficient facts to state plausible claims under 42 U.S.C. § 1983 for Defendant's due process violations and violations of the Social Security Act, 42 U.S.C. § 503. As detailed in the Amended Complaint, Defendant oversaw a software program that routinely and inaccurately redetermined Plaintiffs' eligibility for benefits and generated constitutionally inadequate determinations of liability. Defendant knew the system generated unconstitutional assessments because ALJs *have told ESD* that the assessments are unconstitutional; Defendant testified to as much before the Washington State Legislature. Rather that fixing the system so that it no longer issues unconstitutional determinations, Defendant instead relies on the *victims* of this unconstitutional scheme to appeal the illegal determinations—tying up the claim for months, forcing the claimant to expend

---

[3] *See* Testimony of Cami Feek, Work Session before the Senate Committee on Labor, Commerce, & Tribal Affairs, https://app.leg.wa.gov/committeeschedules/#/Senate/28244/03-01-2021/03-06-2021/Schedule///Bill/ at 1:22:35-1:23:58 (videotaped testimony, Mar. 4, 2021 8:00 a.m. session) ("I know that some have been interested in some kind of moratorium or being able to stop these overpayment letters and we -- we have considered that…"). Courts may take judicial notice of legislative history. *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 945 n.2 (9th Cir. 2013).

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS - 6
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

countless hours of time and effort in the appeal, thrusting the claimant into a prolonged state of uncertainty, and—where the claimant continues to receive ongoing benefits—exposing the claimant to "offset" recoupments. In some instances, Plaintiffs were subject to multiple unconstitutional attempts to recoup benefits. Defendant's argument, moreover, says nothing of the claimant who, either due to lack of adequate notice or for any other reason, does not appeal or simply repays the alleged overpayment. Moreover, ESD collects "overpayments" by deducting them from future benefit payments to which claimants are entitled. *See* WAC 192-230-100.

In other words, Defendant insists she is permitted to rely on a faulty software program that issues unconstitutional assessments so long as unemployed individuals have the opportunity to contest the unconstitutional findings after the fact. Defendant's argument turns the law on its head. It is *her* obligation to abide by the Constitution, not the Plaintiffs' obligation to cure her errors and thereby absolve her of the otherwise-unconstitutional conduct. Because Plaintiffs have alleged facts that allow the Court to draw the reasonable inference that the Defendant is liable for violating their due process rights and rights to a fair hearing and to payment of unemployment benefits when due, this Court should deny Defendant's motion.

## A. Plaintiffs have plausibly alleged a § 1983 claim based on the procedural due process requirements of the 14th Amendment.

A 42 U.S.C. § 1983 claim based upon procedural due process has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process. *Armstrong v. Reynolds*, 22 F.4th 1058, 1066 (9th Cir. 2022).

### 1. Plaintiffs allege deprivation of a property interest.

Defendant concedes Plaintiffs have a property interest in their unemployment benefits but argues that no deprivation occurred because Plaintiffs successfully appealed the ESD's unconstitutional decisions. Defendant's argument misses the mark.

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS - 7
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

First, several Plaintiffs allege wrongful withholding of their benefits.[4] Plaintiff Sterling, for example, alleges that ESD withheld $6,994 from his ongoing weekly benefit payments to offset an unconstitutional finding of overpayment. Dkt. #14 at ¶58. Plaintiff Sterling alleges although he prevailed in an appeal, "ESD has refused to return to [him] the funds it deducted from [his] weekly benefits as an offset to pay for the January 29, 2021, overpayment amount." *Id.* at ¶60. Defendant argues that because Mr. Sterling is "entitled" to the return of all funds, he has not been deprived of property. In other words, Defendant argues *the actual seizure and ongoing failure to return property* is not a deprivation of property. Common sense and well-established case-law negate this proposition. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541-42 (1985); *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 901 (6th Cir. 2019) (holding claimants plausibly alleged due process violation where state relied on automated fraud detection system to review eligibility for unemployment). Similarly, Plaintiff Ecklund alleges some of her weekly claims were not paid and ESD never provided notice of denial of the claim. Dkt. #14 at ¶71-72.

Moreover, as the Supreme Court has long recognized, temporary and partial interferences with property rights may result in a due process violation. In *Connecticut v. Doehr*, the Court struck down a statute that allowed plaintiffs to attach property pre-judgment. 501 U.S. 1 (1991). Although plaintiffs had no right to possess the property until after judgment, the Court nonetheless held attachment was a deprivation of property under the Due Process Clause. *Id.* at 11-12 ("even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection.").

When ESD issues a finding of eligibility for benefits, it creates a property right for claimants. *See* Dkt. #14 at ¶¶26, 32; *Goldberg*, 397 U.S. at 262; *Cahoo*, 912 F.3d at 900 ("Recipients of unemployment compensation have constitutionally-protected property interests in unemployment benefits."). An ESD redetermination is a *"determination of liability"*—a

---

[4] Plaintiffs seek to represent a class that would include many other individuals who have been denied benefits, repaid benefits, and/or who temporarily or permanently lost benefits through offsets due to Defendant's unlawful conduct.

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS - 8
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

finding that the claimant is no longer entitled to the benefits received and must repay them. RCW 50.20.190(3) (emphasis added); *see also* WAC 192-220-017. Thus, whether or not the claimant has yet paid the funds back, the claimant is no longer the owner of the benefits already received. In other words, a debt ("determination of liability") has been formally issued against the claimant even if the claimant has yet to pay the debt allegedly owed. *See id.* The burden is on the *claimant* to appeal the determination and disprove ESD's conclusion. *See* RCW 50.20.190(3). "If [the claimant] do[es] not repay an overpayment in full or make the minimum monthly payments provided for . . . , the principal amount will be deducted from benefits payable for any [future] week(s)" for which the claimant seeks benefits. WAC 192-230-100. Just as in *Doehr*, the redetermination itself constitutes at least a temporary or partial deprivation of the property interest. Damages flow from this deprivation of the entitlement to benefits; claimants suffer emotional distress, spend months in legal limbo where it is unclear if they may keep money already received, expend time and money appealing the redetermination, and must budget for the possibility of repayment. *See* Dkt. #14 at ¶¶61, 68, 69, 78, 82-83, 87, 90-91, 95-96.

The Sixth Circuit reached a similar conclusion in a remarkably similar case. In *Cahoo*, the plaintiffs similarly alleged the state of Michigan used a faulty software program for administering unemployment benefits. 912 F.3d at 892-94. The computer program issued automated "fraud" determinations, often erroneously, that exposed claimants to future recoupment proceedings. *Id.* at 892-95. Although only two of the five named plaintiffs were actually forced to repay money as a result of this program, the Sixth Circuit nonetheless concluded that all five plaintiffs had been deprived of a property interest. *Id.* at 901. In response to the argument that the plaintiffs had not been deprived of a property right, the Court explained that the finding of fraud could interfere with plaintiffs' ability to obtain unemployment benefits to which they would otherwise be entitled *in the future*. The same is true here; a claimant with an "overpayment" balance faces offsets if they file a new unemployment claim. WAC 192-230-100.

The United States Department of Labor ("DOL") also recognizes that an overpayment

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS - 9
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

notice itself interferes with the claimant's interest in benefits, and thus requires notice and a hearing before *issuing* the redetermination notice, not simply before *collecting* the overpayment. Portia Wu, DOL UIPL No. 01-16 at 2-3 (Oct. 1, 2015), https://wdr.doleta.gov/directives/attach/UIPL/UIPL_01-16_Acc.pdf. Recognizing the serious impact of redeterminations on an unemployment recipient, DOL also instructs state agencies not to redetermine benefits based on computer analysis without independently verifying the information leading to the redetermination. UIPL No. 01-16 at 5.

Furthermore, "there are two types of injuries cognizable under the procedural component of the Due Process Clause: one occurs from the wrongful taking of property; the other occurs from being denied fair treatment by the government, even if the deprivation was not wrongful, as individuals can suffer emotional distress due to their unfair treatment." *Cahoo v. Fast Enterprises LLC*, 528 F. Supp. 3d 719, 756 (E.D. Mich. 2021), *reconsideration denied*, No. 17-10657, 2022 WL 157818 (E.D. Mich. Jan. 18, 2022) (citing *Carey v. Piphus*, 435 U.S. 247, 262-64 (1978)). Here, the illegal redetermination of benefits and unconstitutional assessments caused recipients substantial injury including emotional distress. *See* Dkt. #14 at ¶¶61, 69, 87, 83, 87, 91, 96.

## 2. A post-deprivation appeal does not cure the lack of pre-deprivation notice and hearing.

Defendant claims that because certain Plaintiffs have successfully appealed the deprivation of property *post-deprivation*, there is no due process violation. Defendant is wrong.

"[T]he Supreme Court has held that the hallmark of due process is that a deprivation of a property interest must be 'preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Loudermill,* 470 U.S. at 542. "'[T]he root requirement' of the Due Process Clause [is] 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'" *Id.* The Supreme Court has instructed courts to consider three factors when determining whether an individual received sufficient pre-deprivation process:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS - 10
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (citing *Goldberg*, 397 U.S. at 263-71). "Applying this test, the [Supreme] Court has usually held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

Moreover, as *Cahoo* and the Supreme Court have recognized, "postdeprivation remedies alone will not satisfy due process if the deprivation resulted from conduct pursuant to an 'established state procedure,' rather than random and unauthorized conduct." *Cahoo*, 912 F.3d at 903 (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-36 (1982)). The reasoning for this conclusion is obvious: where a state-run process is constitutionally infirm, the state should *fix the process* rather than relying on a post-deprivation remedy that puts the burden on the claimant to cure the constitutional violation.[5]

Ignoring this overwhelming body of appellate federal case law,[6] Defendant relies on unpersuasive out-of-circuit decisions. In *Blackford v. Kansas*, 938 F. Supp. 739 (D. Kan. 1996), for example, a *pro se* plaintiff was never granted unemployment benefits, appealed, and claimed violation of his due process rights because there was an incomplete recording of the initial hearing. This case says nothing about the general appropriateness of post-deprivation remedies to cure a due process violation. In *Daniels v. Commonwealth*, 465 A.2d 726 (Pa. 1983), the state issued a *preliminary* decision that was not finalized until after an opportunity for a hearing; there

---

[5] Defendant separately complains that state law requires her to presume ineligibility where a claimant fails to respond to a request for more information from ESD. Dkt. #16 at 8 n.6. State law, however, does not require Defendant to send claimants unconstitutionally vague and confusing letters. Nor does state law require Defendant to use an automated process to redetermine eligibility for benefits in violation of state law and DOL guidance. Furthermore, federal law *prohibits* issuing an overpayment solely based on failure to respond to a request for information. *See* Portia Wu, UIPL No. 01-16 Change 1 U.S. DEP'T OF LAB., at p.3 (Jan. 13, 2017) ("the failure to report is not sufficient to make a finding as to whether or not any prior weeks of benefits were improperly paid"), https://wdr.doleta.gov/directives/attach/UIPL/UIPL_01-16-Change-1.pdf.

[6] In general, Defendant's brief eschews appellate decision and instead relies heavily on unpublished and lower court decisions for broad propositions about the scope of the Due Process Clause. *See* Dkt. #16 at 8-9.

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS - 11
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

was no allegation that the notice given *prior* to the hearing was inadequate. Under these facts, the Court found the claimant had received due process.[7] Here, Plaintiffs were granted unemployment benefits because they were eligible, and ESD deprived them of benefits before they could have a hearing to challenge the deprivation. *See* Dkt. #14 at ¶¶52-96.

Defendant suggests Plaintiff Sterling—who alleges he has *still* not been repaid the nearly $7,000 owed to him by ESD (*id.* at ¶¶58-60)—has not been denied due process because "he does not contend that he is without other available remedies to collect that amount." Dkt. #16 at 7 n.4. Defendant essentially argues that because Plaintiff Sterling could file a lawsuit seeking repayment of benefits that are his property, it did not violate his due process rights by seizing the property without prior notice or hearing. This argument would preclude virtually every due process claim as there will *always* be "other available remedies" to collect property wrongfully seized.

Moreover, even if post-deprivation remedies could be considered adequate in *some* circumstances, the remedy here was inadequate to cure the initial violation. First, there is a high risk that ESD will wrongfully redetermine claimants to be ineligible for benefits because Defendant allowed UTAB to use a flawed automated process to redetermine eligibility and did not require ESD employees to independently verify the information underlying the redeterminations. *See Mathews*, 424 U.S. at 325. Second, the assessments issued to Plaintiffs and class members are constitutionally deficient because they failed to provide notice of the basis for the redeterminations. Dkt 14 at ¶¶42, 55-56, 64, 66-67, 74-75, 77, 80-81, 86, 93.[8] OAH has

---

[7] Notably, *Daniels* has not been cited, even once, by a state or federal court. It should not be read to announce a broad standard allowing for only post-deprivation remedies.

[8] Defendant downplays the constitutionally infirm redeterminations on the theory that they did not impair plaintiffs' ability to appeal. The cases cited by Defendant, however, provide no support for her position. In *Farina v. Metropolitan Transportation Authority*, 409 F.3d 173, 212 (S.D.N.Y. 2019), for example, the issue was whether *delay* in providing notice of a fine impacted a toll-violator's ability to contest the fine; it did not, and thus there was no due process violation. *Carpenter-Barker v. Ohio*, 187 F. Supp. 3d 881, 886 (S.D. Ohio 2016), addressed solely mootness. In *Mundell v. Board*, No. CIV.A. 05-CV-00585RE, 2007 WL 128805, at *3 (D. Colo. Jan. 12, 2007), the court found the plaintiff was *not* misled or confused by the notice and he understood the basis for the denial of benefits. In *Gean v. Hattaway*, 330 F.3d 758, 773 (6th Cir. 2003), the Court found the lack of notice irrelevant because

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS - 12
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

already found as much. *Id.* at ¶45. Third, the appellate process puts the burden on the *claimant* to appeal and disprove UTAB's redetermination; in some instances, the appellant must re-establish eligibility for benefits. *See id.* at ¶51. Fourth, ESD can collect repayments from claimants through wage garnishments, seizure of tax returns, real property, or through offsets to future benefits, if claimants fail to appeal. RCW 50.20.190; WAC 192-230-100. Fifth, claimants receiving ongoing benefits will have benefits reduced to offset the purported repayment during the appellate process, as occurred for Plaintiff Sterling. Dkt. #14 at ¶58. Sixth, the appellate process takes months, impairing Plaintiffs' property rights through the process. And finally, because of flaws in ESD's software, Plaintiffs are at risk of *repeated* wrongful redeterminations, restarting the process over and over again. *Id.* at ¶¶42, 47, 51.

Rather than defend her conduct, Defendant relies on the *frequency* of the constitutional violations as a point in her favor, arguing that because OAH *knows* the redeterminations are constitutionally invalid, there is no harm to claimants. Dkt. #16 at 9-10. Put another way, Defendant claims a state agency may routinely violate the Constitution if an administrative appeals entity knows about the violations. This Court should not adopt this proffered approach.

**B.      Qualified immunity does not bar Plaintiffs' claims.**

Ignoring the leading appellate case squarely addressing the issues here, *Cahoo v. SAS Analytics*, Defendant argues Plaintiffs' claims are subject to dismissal on qualified immunity grounds because the right at issue was not clearly established. The Sixth Circuit already found in a remarkably similar case that qualified immunity does not bar claims against state officials for authorizing the use of software that routinely deprives unemployment claimants of property rights without adequate notice or a pre-deprivation hearing. *Cahoo*, 912 F.3d at 899-905.

As the court recognized in *Cahoo*, the right to notice and a hearing prior to deprivation of unemployment benefits is clearly established. *Id.* at 903-904. Thus, "every reasonable Agency

---

the plaintiff had *no right to the property being claimed.* In none of these cases did the plaintiff allege the initial state action *itself* caused damage to plaintiff that was exacerbated by the deficient notice, as Plaintiffs allege here.

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS - 13
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

employee should have known that depriving Plaintiffs of their property interests without adequate notice or a meaningful opportunity to be heard violated due process." *Id.* at 904. And "every reasonable Agency employee should have realized that the flawed [unemployment software] system resulted in unconstitutional deprivations of protected property interests" because it "did not entail any meaningful fact-finding measures[] and failed to provide adequate notice or an opportunity to be heard prior to terminating claimants' unemployment benefits…" *Id.* Much like the state officials in *Cahoo*, Defendant knew or should have known (1) the flawed UTAB system generated redeterminations without adequate factual basis; (2) ESD did not independently verify the redetermination findings before issuing notices to individuals in violation of the guidance issued by DOL; and (3) UTAB did not give individuals constitutionally adequate notice. Case law clearly establishes that where there is a high risk of wrongful deprivation of benefits, post-deprivation remedies will not suffice. *Mathews*, 424 U.S. at 335.

Case law also clearly establishes that notice must be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950). Defendant knew the UTAB communications were deficient because *OAH repeatedly told ESD the letters violated the Due Process Clause*. Defendant cannot claim she had no reasonable notice her conduct was illegal when she knew: (1) UTAB ran a substantial risk of wrongfully depriving claimants of benefits; *and* (2) the letters regarding the deprivation were unconstitutionally deficient under well-established Supreme Court precedent.[9]

In *Cahoo*, the Sixth Circuit rejected any assertion that novelty of constitutional violation— through the usage of the unemployment software—rendered the right not "clearly established." As the Court explained, "[t]he operative inquiry is not whether a previous court faced perfectly

---

[9] Defendant argues OAH's decisions failed to give her prior notice of unconstitutional behavior because they are not decisions from a judicial forum. But OAH applied the due process notice standards clearly spelled out by state and federal case law in determining Defendant's conduct violated the Constitution.

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS - 14
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

analogous facts—it is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Cahoo*, 912 F.3d at 904 (quoting *Baynes v. Cleland*, 799 F.3d 600, 610 (6th Cir. 2015)); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("officials can still be on notice that their conduct violates established law even in novel factual circumstances"). Where the state actor employs a computer system that has *known* problems leading to the unconstitutional deprivation of benefits with inadequate notice, the defendant cannot hide behind the software to claim qualified immunity. *Cahoo*, 912 F.3d at 905; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982) (where the right is "clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing [the official's] conduct").

Defendant misconstrues Plaintiffs' claims as simply alleging an "erroneous" finding of a redetermination rather than a violation of constitutional rights. Plaintiffs allege the redetermination, generated from the flawed UTAB system without prior notice or hearing, constituted a constitutional violation. Dkt. #14 at ¶¶42, 118. Plaintiffs do not allege Defendant simply made good faith mistakes about unemployment eligibility; Plaintiffs allege she used a software program that *systematically* made unlawful redetermination findings and, contrary to DOL requirements, made no attempt to independently verify the basis for the redeterminations. Defendant willingly embraced the usage of a program that Defendant *knew* would wrongfully redetermine benefits, posing a substantial risk that the recipient would forfeit property, and Defendant failed to take adequate steps to reduce the risk of unconstitutional deprivations.

**C.   Plaintiffs have alleged adequate facts against Defendant individually.**

Although supervisors cannot be liable on a respondeat superior theory for 42 U.S.C. § 1983 claims, supervisors need not actually commit the misconduct or even be present at the time of the constitutional violation to be liable, so long as their actions proximately caused or led to the plaintiff's injury. *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011). "The requisite causal connection can be established . . . by setting in motion a series of acts by others, which [the

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS - 15
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1207-08 (internal quotations omitted). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)). Moreover, a supervisor's failure to intervene in a constitutional violation is sufficient to establish liability. *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995).

Plaintiffs do not need to allege that Defendant played a *personal* role in redetermining their individual benefits to maintain a § 1983 claim. It is sufficient to allege Defendant is responsible for applying the flawed UTAB system, enforcing automated determinations with knowledge of the flaws in the system, and failing to take corrective action—even if she did not create the UTAB system. *See Cahoo*, 912 F.3d at 901 n.6; *Cahoo*, 528 F. Supp. 3d at 750-51. Facing strikingly similar facts, the *Cahoo* court refused to dismiss claims against the unemployment commissioner who inherited the faulty computer program where the plaintiffs alleged that the commissioner "continued to pursue the same defective policies despite knowing about [software] problems and invalid fraud determinations." *Cahoo*, 912 F.3d at 901 n. 6. On a subsequent motion for summary judgment, the district court affirmed that decision, explaining that although the new commissioner took steps to resolve some flaws in the software program, "the record allows an inference that she actively encouraged, authorized, or acquiesced to the rote application of logic trees and use of substantively deficient questionnaires and fraud determination notices." *Cahoo*, 528 F. Supp. 3d 719 at 751.

The allegations in the Amended Complaint go far beyond the allegations the Sixth Circuit deemed adequate in *Cahoo* to survive a motion to dismiss. Indeed, Plaintiff alleges a robust set of facts regarding Defendant's individual conduct:

- Defendant "administers" a "defective claims management program" (Dkt. #14 at ¶1);

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS - 16
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

- Defendant "requires" ESD employees to use UTAB (*id.* at ¶2);
- Defendant has "publicly stated her ongoing support and belief in the automated claims system" and that "process automation and claimant 'self-service' are essential tools for the administration of the unemployment benefit program (*id.* at ¶41);
- Defendant is aware of the systemic flaws in UTAB, including that UTAB automatically redetermines eligibility without adequate factual finding and generates vague and confusing notices (*id.* at ¶¶42-43);
- Defendant has acknowledged UTAB's deficiencies in public statements and in testimony before the Washington State Legislature (*id.* at ¶43);
- Despite knowledge of UTAB's problems, Defendant has not stopped ESD's unlawful notice practices (*id.* at ¶46);
- On information and belief, Defendant knew of and ratified a work-around that allowed ESD to continue using UTAB's deficient systems to issue notices and assess overpayments (*id.* at ¶46);
- Defendant testified to the Legislature that ESD has an ongoing policy of automatically redetermining eligibility and assessing overpayments based solely on the claimant's failure to respond within five to ten days to an ESD request for information (*id.* at ¶47);
- Defendant confirmed to the legislature "ESD's form correspondence is often unintelligible and that ESD is constantly re-evaluating claimants' eligibility for benefits and assessing overpayments long after those benefits were paid" (*id.* at ¶47);
- Defendant causes ESD to continue to issue deficient redetermination and/or overpayment assessments, which are not understood or successfully appealed (*id.* at ¶50);
- Defendant continues to cause ESD to propound untimely and deficient redetermination and overpayment assessment letters (*id.* at ¶51).

**D.    The full range of Section 1983 damages are available to Plaintiffs.**

Defendant argues Washington law limits Plaintiffs' damages for their § 1983 claims to the value of their unemployment benefits. Not only is Defendant's argument premature, it is wrong. Section 1983 is a remedial statute "broadly construed" to provide a remedy "against all forms of official violation of federally protected rights." *Dennis v. Higgins*, 498 U.S. 439, 445 (1991). Section 1983 is meant to compensate those injured by a deprivation of federal rights and to prevent future abuses of power by deterrence. *Robertson v. Wegmann*, 436 U.S. 584, 59 (1978).

Although state law may inform damages under § 1983, it may do so only to the extent it is not inconsistent with the purposes of § 1983. Where the remedy afforded by state law is inconsistent with the dual purposes of § 1983—compensation and deterrence—federal courts

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS - 17
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

must disregard state rules. *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1104-05 (9th Cir. 2014) (refusing to apply California law limiting recovery for pre-death pain and suffering because doing so was not consistent with § 1983's deterrence policy). Here, confining the remedy for the violation of Plaintiff's due process rights to unemployment benefits themselves would not adequately compensate plaintiffs or deter similar misconduct. Limiting Plaintiffs to the recovery of the benefits themselves would not compensate Plaintiffs for the time and effort expended in securing the property rights or the significant emotional distress suffered during the pendency of the appeal. *See Carey v. Piphus*, 435 U.S. 247, 263–64, 257 n.11 (1978) (recognizing emotional distress damages are available for violations of due process rights). Limiting damages as Defendant proposes would also not compensate Plaintiffs or class members for prejudgment interest or attorneys' fees incurred where benefits were temporarily or permanently revoked. It would not deter Defendant or other state officials from engaging in such conduct in the future. Defendant could continue to systematically violate the constitutional rights of claimants with no real risk of liability if all that was required to moot a lawsuit would be to repay the benefits that were wrongfully rescinded in the first place. The wrong sought to be righted in this lawsuit is not merely the deprivation of a property right, but the deprivation of a property right in an unconstitutional manner.

No case cited by Defendant suggests otherwise. *Washington Trucking Associations v. State* is not on point; it concerns the remedy for § 1983 actions challenging the validity of state taxes. 188 Wn.2d 198, 211-16 (2017). Section 1983 claims challenging state taxes are subject to a different analysis than ordinary § 1983 claims. *See id.*

**E.     Plaintiff Sterling's claims accrued under Defendant's leadership of ESD.**

Based on the fact that Sterling's redetermination letter was issued two days before Defendant transitioned to Acting Commissioner, Defendant argues Plaintiff Sterling's claim arose "before" her tenure. The specific allegations and timeline reveal this argument to be misguided.

On January 29, 2021, ESD issued Sterling a redetermination letter finding him ineligible

PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS - 18
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

to keep benefits paid from September 20 to December 20, 2020. Dkt. #14 at ¶56. Defendant became Acting Commissioner on February 1, 2021, *id.* at ¶39, and her LinkedIn profile confirms she previously oversaw ESD operations for several years in different capacities. Sterling requested a waiver, which ESD—under Defendant's control—denied on February 11. *Id.* at ¶57. In *that* letter, ESD claimed Sterling was ineligible for benefits beginning March 15, 2020, not simply from September to December. *Id. While Sterling was waiting for his appeal*, ESD, guided by Defendant, took nearly $7,000 in "offsets" from Sterling's ongoing benefits—a deprivation that occurred without constitutionally adequate notice or hearing. *Id.* at ¶58. This occurred while Defendant was the acting Commissioner. Moreover, even after Sterling prevailed in his appeal in August 2021, ESD had not repaid him. *Id.* at ¶60. Thus, the facts show that while Defendant was serving as Commissioner: (1) ESD issued a constitutionally deficient redetermination to Sterling regarding his eligibility for benefits for the period beginning March 15, 2020, using the UTAB system; (2) ESD collected money from Sterling in the form of offsets based on the UTAB redetermination; and (3) ESD failed to return money to Sterling after his successful appeal. Plaintiffs need not allege that Defendant *personally* committed any of these acts—only that she was aware of and allowed ESD to continue to enforce deficient redeterminations.

**F.    Plaintiffs properly pled their § 1983 claim based on the "when due" requirement in 42 U.S.C. § 503(a)(1).**

Against the great weight of case law, Defendant claims 42 U.S.C. § 503(a)(1) does not provide a cause of action. "Private causes of action have regularly been allowed in suits based upon the Social Security Act." *Brewer v. Cantrell*, 622 F. Supp. 1320, 1322 (W.D. Va. 1985). "Under 42 U.S.C. § 1983, a private cause of action is also allowed." *Id.* at 1323. Plaintiffs properly pled § 503 claims under 42 U.S.C. § 1983, and Plaintiffs' claims are not moot.

**1.    For over fifty years, courts have recognized lawsuits under § 503(a)(1).**

The Supreme Court has recognized that § 503(a)(1) provides a right of action to eligible unemployment claimants whose benefits are canceled or suspended despite eligibility. *See Cal.*

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS - 19
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

*Dep't of Hum. Res. Dev. v. Java*, 402 U.S. 121, 135 (1971). In *Java*, a class of plaintiffs sued the state seeking, in part, a declaration that California's practice of suspending unemployment benefits pending an appeal violated § 503(a)(1). *Id.* at 124. Under the operative unemployment program, if an employer appealed a determination of unemployment eligibility, the department would suspend payment of unemployment benefits pending the appeal. *Id.* at 128. If the unemployment claimant was successful in defending their eligibility, then the department would pay the unemployment claimant a lump sum payment of the suspended benefits. *Id.* at 129.

The plaintiffs argued that the suspension of benefits violated the strictures of § 503(a)(1) requiring payment of benefits "when due." *Id.* at 129-30. The Court agreed. *Id.* at 133. Analyzing the history and policy surrounding the enactment of the unemployment system, the Court concluded that "when due" meant "the time when payments are first administratively allowed as a result of a hearing of which both parties have notice and are permitted to present their respective positions." *Id.* at 133. The Court explained "delaying compensation until months have elapsed defeats" the purpose of the Social Security Act, and a procedure "which suspends payments" for "weeks pending appeal, after an initial determination of eligibility has been made, is not 'reasonably calculated to insure full payment of unemployment compensation when due.'" *Id.*

*Java* established that § 503(a)(1) imposed two requirements on state unemployment programs. First, once an initial determination that a claimant was eligible occurred, a state could not suspend benefits pending a redetermination of eligibility, such as through an appeal. *Id.* Second, a state could not make a determination regarding eligibility without first providing a pre-determination factfinding process and reasonable notice of hearing to the claimant. *Id.* This interpretation of *Java* was solidified by DOL UIPL No. 1145.

Following *Java*, federal courts repeatedly recognized private suits against state unemployment programs alleging violations of § 503(a)(1). *Jenkins*, 691 F.2d 1225, 1228 (7th Cir. 1982); *Eunice v. Ellzey*, No. 2:21-cv-2010-BHH, 2022 WL 2374165, at *7 (D.S.C Mar. 10, 2022) ("following *Java*, courts around the country recognized a private right of action under §

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS - 20
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

503(a)(1)" and "the 'fair hearing' provision of § 503(a)(3)"); *Brewer*, 622 F. Supp. at 1322-23. Indeed, the Seventh Circuit considered the availability of private suits "too well settled to be questioned by us." *Jenkins v. Bowling*, 691 F.2d at 1228. "[B]ecause the Supreme Court has never specifically repudiated *Java*," courts must "proceed under the conclusion that such a private right exists." *Eunice*, 2022 WL 2374165, at *8. Thus, this Court should hold that § 503(a)(1) provides Plaintiffs a private right of action enforceable under § 1983.

### 2. Plaintiffs' § 503(a)(1) claims apply to Defendant's invalid recoupment procedures.

This Court should also reject Defendant's argument that § 503(a)(1) does not apply to unemployment recoupment. In the cases Defendant cites, the recoupment procedures at issue *were lawful*—unlike here. Indeed, *Blount v. Smith* expresses the very purpose of Plaintiffs' § 503(a)(1) claims by explaining that an *unlawful* recoupment procedure violates § 503(a)(1): "If [the state's recoupment procedure statute] were invalid, as Plaintiffs assume, then benefits would indeed be 'due and § 303 of the Federal Act would require the state to provide prompt payment.'" *Blount v. Smith*, 440 F. Supp. 528, 530 (M. D. Penn. 1977).[10]

Here, the recoupment procedures used by Defendant are invalid. Therefore, benefits are "due" and require prompt payment and a pre-deprivation hearing before eligibility is revoked or altered. The UTAB system automatically redetermines claimant eligibility for past benefits based on a claimant's failure to respond to a vague message. Dkt. #14 at ¶42. In doing so, UTAB bases its redetermination decision on factors other than fraud, misrepresentation, or non-disclosure. *Id.* UTAB then generates redeterminations and overpayment assessments that are untimely and beyond ESD's legal authority. *Id.* at ¶¶31, 42, 50-51. As explained, these overpayment assessments are legally deficient, and ESD does not provide a hearing prior to making a redetermination. *Id.* at ¶¶34-37, 42-43, 50-51.

---

[10] Plaintiffs do not dispute that a state may institute lawful recoupment procedures to collect overpayment of benefits. However, as explained, ESD's use of UTAB led to repeated and unlawful suspension, debit, and collection of eligible claimants' unemployment benefits.

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS - 21
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

Section 503 required ESD to provide a pre-deprivation fact-finding process and hearing before determining ineligibility and overpayment. For each Plaintiff, ESD redetermined their benefit without allegations of fraud, misrepresentation, or nondisclosure, and outside of the thirty-day window for ESD to make such a redetermination. *See* RCW 50.20.160(3). ESD also instituted recoupment procedures without providing any pre-deprivation fact-finding investigation in violation of *Java* and UIPL No. 1145.

For each Plaintiff, ESD redetermined eligibility and assessed an overpayment without any pre-deprivation fact-finding process or hearing. Accordingly, Defendant failed to provide benefits "when due," and Plaintiffs have properly pled a violation of § 503(a)(1) under *Java*'s pre-deprivation hearing requirement. Furthermore, Plaintiffs Sterling's and Ecklund's benefits were suspended, debited, and/or not paid despite eligibility, and Defendant failed to provide payment while eligibility was redetermined. ESD took thousands of dollars from Plaintiff Sterling through "offsets." Dkt. 14 at ¶58. Despite winning his appeal, ESD refuses to return these amounts to him. *Id.* at ¶60. Similarly, Defendant failed to provide Plaintiff Ecklund benefits for many weeks after September 2021. *Id.* at ¶71-72. Despite receiving backpay for some missed benefits, she still has not received all of her benefits. *Id.* at ¶72. Accordingly, Defendant violated § 503(a)(1) by failing to provide the Plaintiffs with prompt payment of benefits when due.

Section 503(a)(1) provides a private cause of action through § 1983 for claimants denied prompt payment of their benefits and/or a pre-deprivation fact-finding process and hearing before any adverse eligibility redetermination. Defendant failed to provide every Plaintiff a pre-deprivation fact-finding process and hearing before redetermining their eligibility and assessing overpayments. For Plaintiffs Sterling and Ecklund, Defendant withheld benefits they were otherwise eligible to receive. Accordingly, Plaintiffs have each pled a viable § 503(a)(1) claim.

### 3.    Plaintiffs' § 503(a)(1) claims are not moot.

The Court should reject Defendant's argument that the claims of Plaintiffs who successfully appealed their redetermination decisions are moot.

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS - 22
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

Contrary to Defendant's contention, *Indiana Employment Security Division v. Burney* does not establish that successful determinations of unemployment eligibility moot § 503(a)(1) claims. Rather, *Burney* merely questioned the application of the mootness doctrine, and the case was remanded to determine that issue.[11] *Ind. Emp't. Sec. Div. v. Burney*, 409 U.S. 540, 541 (1973) ("The full settlement of Mrs. Burney's financial claim raises the question whether there continues to be a case or controversy in this lawsuit."). As recognized by Justices Marshall and Brennan in dissent, a determination of mootness in these circumstances is highly suspect:

> A determination of mootness based on this line of reasoning would effectively bar the full and final litigation of whether a pre-termination hearing is legally required, while leaving Indiana free to continue to provide Mrs. Burney and other beneficiaries of unemployment insurance with only post-term termination hearings.

*Id.* at 544. A claim is not moot if it is "capable of repetition, yet evading review." *Id.*[12]

Courts now widely recognize an exception to the mootness doctrine for cases that are capable of repetition, yet evading review. *See Kingdomware Tech. Inc. v. United States*, 579 U.S. 162, 170 (2016). This exception applies where (1) the challenged action is too short in duration to be fully litigated prior cessation or expiration, and (2) the plaintiff can reasonably expect to be subjected to the same action again. *Id.* In the class action context, the potential for repetitive violations is more severe, as defendants might evade review of unlawful practices merely by seeking to resolve the claims of the named plaintiffs:

> The claims of delay which the plaintiffs advance, however, epitomize the type of claim which continually evades review if it is declared moot merely because the defendants have voluntarily ceased the illegal practice complained of in the particular instance. Thus, the defendants may expedite processing for any plaintiffs named in a suit while continuing to allow long delays with respect to all other applicants.

---

[11] Defendant also cites *East v. Pryor*, 89 F.R.D. 75, 77 (E.D. Ark. 1981) for her argument that Plaintiffs' § 503(a)(1) claims are moot. However, *East v. Pryor* summarily determined that the claims were moot with functionally no legal reasoning and no consideration of mootness exceptions. Consequently, *East v. Pryor* is of little use in this analysis.

[12] Critically, Justices Marshall and Brennan recognized the claimants in *Java* each received post-termination hearings during the litigation, and the *Java* claimants were still entitled to pursue their federal claims. *Id.*, n. 3.

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS - 23
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

*Blankenship v. Secretary of HEW*, 587 F.2d 329, 333 (6th Cir. 1978). Courts that have addressed mootness in the § 503 context have regularly found that the claims are not moot despite the claims being resolved through the state's administrative process. *Wilkinson v. Abrams*, 627 F.2d 650, 656-57 (3rd Cir. 1980); *Kelly v. Lopeman*, 680 F. Supp. 1101, 1105 (S.D. Ohio 1987); *Wheeler v. St. of Vt.*, 335 F. Supp. 856, 860 (D. Vt. 1971).

In this case, Defendant's violation § 503(a)(1) will likely reoccur and escapes review. Defendant continues to employ UTAB to issue redeterminations and overpayment assessments. Defendant permits claimants to challenge the ineligibility and overpayment determinations in a post-deprivation appeal. Accordingly, it is likely that Defendant will continue to make ineligibility and overpayment assessments without a pre-deprivation fact-finding process and hearing, and that those determinations will be resolved through the administrative process before any court can determine whether UTAB violates § 503(a)(1). Defendant should not be protected from liability merely because Plaintiffs sought to defend themselves from Defendant's unlawful conduct by appealing the unlawful redeterminations.

## IV.    CONCLUSION

Under Rule 12(b)(6), Plaintiffs have alleged sufficient facts to plausibly make out a claim that Defendant's conduct violated their procedural due process and § 503 rights. Thus, Plaintiffs respectfully ask the Court to deny Defendant's Motion to Dismiss in its entirety.

In the alternative, should this Court find any deficiencies in Plaintiffs' Amended Complaint, Plaintiffs respectfully request that the Court grant Plaintiffs leave to amend pursuant to Rule 15(b). This case is still in its infancy. The parties have conducted no discovery. Upon further investigation or discovery, Plaintiffs may amend the complaint to (1) add Defendant's predecessor or other ESD officials as named defendants; (2) include additional allegations about what Defendant and other ESD officials did; and (3) add a named plaintiff who did not successfully appeal a redetermination or overpayment assessment.

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS - 24
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798

1    DATED this 18th day of July 2022.

2                                  SMITH & DIETRICH LAW OFFICES PLLC

3
                                   By:   *s/ Walter Smith*
4                                        Walter M. Smith, WSBA #46695
                                         walter@smithdietrich.com
5                                        Steve E. Dietrich, WSBA #21897
                                         steved@smithdietrich.com
6                                        3905 Martin Way E, Suite F
                                         Olympia, WA 98506
7                                        Phone: (360) 915-6952

8

9                                  FRANK FREED SUBIT & THOMAS LLP

10                                 By:   *s/ Marc Cote*
                                         *s/ Anne Silver*
11                                       *s/ Jack Miller*
                                         Marc C. Cote, WSBA #39824
12                                       mcote@frankfreed.com
                                         Anne E. Silver, WSBA #51695
13                                       asilver@frankfreed.com
                                         Jack N. Miller, WSBA #57007
14                                       jmiller@frankfreed.com
                                         705 Second Avenue, Suite 1200
15                                       Seattle, WA 98104
                                         Phone: 206-682-6711
16

17                                 *Attorneys for Plaintiffs and Proposed Classes*

18

19

20

21

22

23

24

25

26

PLAINTIFFS' RESPONSE TO          SMITH & DIETRICH LAW OFFICES PLLC    FRANK FREED SUBIT & THOMAS LLP
DEFENDANT'S MOTION TO                  3905 Martin Way E, Suite F          705 Second Avenue, Suite 1200
DISMISS - 25                              Olympia, WA 98506              Seattle, Washington 98104-1798
Case No. 3:22-cv-05250

CERTIFICATE OF SERVICE

I, Megan Grosse, hereby certify that on July 18, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Timothy G. Leyh, WSBA #14853
    Randall T. Thomsen, WSBA #25310
    Ariel A. Martinez, WSBA #54869
    999 Third Avenue, Suite 4400
    Seattle, WA 98104
    Email:  timl@harriganleyh.com
    Email:  randallt@harriganleyh.com
    Email:  arielm@harriganleyh.com

    *Attorneys for Defendant*

DATED this 18th day of July, 2022.


            By: *s/ Megan Grosse*
                Megan Grosse, Legal Assistant

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS - 26
Case No. 3:22-cv-05250

SMITH & DIETRICH LAW OFFICES PLLC
3905 Martin Way E, Suite F
Olympia, WA 98506

FRANK FREED SUBIT & THOMAS LLP
705 Second Avenue, Suite 1200
Seattle, Washington 98104-1798