1

2

3

4

5

6

7

8
                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
9                              AT TACOMA

10

11      DAMARIO RASHEED STERLING et al.,          CASE NO. 3:22-cv-05250

                              Plaintiffs,          ORDER ON MOTION TO DISMISS
12
               v.
13
        CAMI L. FEEK, Commissioner,
14      Washington State Employment Security
        Department, in her individual capacity, and
15      in her official capacity,

16                            Defendant.

17
            This matter comes before the Court on Defendant Cami Feek's Motion to Dismiss.  (Dkt.
18
     No. 16.)  The Court has considered the pleadings filed in support of and in opposition to the
19
     motion and the remainder of the record.  The motion is GRANTED in part and DENIED in part.
20

21

22

23

24

ORDER ON MOTION TO DISMISS - 1

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

**A.  Washington State's Unemployment Application and Appeal Process**

Washington State's unemployment benefits system is administered by the Washington Employment Security Department ("ESD" or the "Agency").  Defendant Cami Feek became the ESD acting Commissioner on February 1, 2021 and the actual Commissioner on June 9, 2021. (Dkt. No. 14 at 12.)  In 2018, ESD began using the Unemployment Tax and Benefits System ("UTAB"), an automated computer program that stores data on claims, claimants, employers, and other information for managing and paying benefits.  (*Id*.)

When an individual in Washington State applies for unemployment benefits, ESD issues a Notice of Monetary Determination stating whether the individual is eligible for unemployment compensation.  (*Id*. at 6.)  If ESD finds that the applicant is eligible, the Agency issues a determination that includes the claimant's maximum weekly benefit amount and maximum potential benefit amount.  (*Id*.)  If, after assessing a claimant as monetarily eligible for benefits, ESD detects any issues with an individual's claim, the Agency assigns the matter to an adjudicator for review.  (*Id*.)  If the adjudicator finds that an individual is ineligible for benefits, the Agency must promptly issue a denial notice.  (*Id* at 7.)  Claimants are entitled to an administrative appeal of such determinations under state and federal law.  (*Id*.)

Under Washington law, an individual who is paid any amount as benefits to which he or she is not entitled shall be liable for repayment of the amount overpaid.  (*Id*. at 9.)  Applying guidance from the United States Department of Labor, if ESD finds that it has overpaid a claimant, before applying an offset, it must notify the claimant, send the claimant a determination of overpayment and a notice of appeal rights, and afford the claimant an opportunity to be heard.  (*Id*. at 10.)

### B.  Benefit Redetermination Letters Sent to Plaintiffs

1.  <u>Demario Rasheed Sterling</u>

Plaintiff Demario Rasheed Sterling ("Sterling"), a professional contractor and finisher, lost his job in early 2020 due to the COVID-19 pandemic.  (Dkt. No. 14 at 16.)  He applied for benefits from ESD, was found monetarily eligible, and began receiving unemployment benefits in March 2020.  (*Id.*)  The letter Sterling received from ESD informed him of the amount of money he would be receiving in benefits, and advised him that the agency might need to adjust the amount "based on a number of factors."  (*Id.*)  The letter told Sterling that "[a]nytime there is an adjustment to your determination, [ESD] will send you a Redetermination of Unemployment Claim" and informed him that ESD was required to issue a redetermination before he could file an appeal.  (*Id.*)

In January 2021, Sterling received a redetermination letter from ESD informing him the agency had overpaid him by $7332.00, and that if he did not complete and return a "waiver request form," he would have to repay the entire overpayment amount in addition to any supplemental weekly benefits funded by the federal government.  (*Id.* at 17.)  The letter included a table of overpayments from September through December of 2020, and informed Sterling that he was denied benefits during this period for "multiple reasons" during most weeks identified in the notice, but did not explain further.  (*Id.*)  The letter informed Sterling that he could appeal the redetermination.  (*Id.*)

Sterling requested that ESD waive the overpayment.  (*Id.*)  ESD denied his request, after which Sterling appealed.  (*Id.* at 17-18.)  While Sterling waited for his hearing, ESD took nearly $7,000.00 in offset payments from Sterling's continuing unemployment benefits as compensation for the overpayments identified in the January 2021 redetermination letter.  (*Id.* at

1    18.)  An Administrative Law Judge ("ALJ") ruled in Sterling's favor, but Sterling was unable to

2    recover the funds offset from his weekly benefits despite repeated communications with ESD,

3    and ESD has not explained why it has not returned the improperly offset funds.  (*Id*.)

4              2.  David Sherwood Johnson

5          Plaintiff David Sherwood Johnson ("Johnson"), a licensed pharmacist, lost his job in

6    early 2020.  (Dkt. No. 14 at 19.)  Johnson applied for unemployment benefits, and received a

7    letter from ESD in April 2020 informing him that he was eligible for Pandemic Unemployment

8    Assistance ("PUA"), a federally funded unemployment benefits program created by the

9    Coronavirus Aid, Relief, and Economic Security Act.  (*Id*.)  Johnson began receiving benefits.

10         In June 2021, ESD sent Johnson a letter informing him that he was no longer eligible for

11    PUA benefits and ESD was denying his unemployment benefits from November 8, 2020, to

12    November 20, 2021 because he was "eligible for a new unemployment claim."  (*Id*.)  Johnson

13    successfully appealed this redetermination, and he later received an email from ESD informing

14    him that ESD's computer system may have created an overpayment by mistake.  (*Id*. at 19-20.)

15         In November 2021, ESD sent Johnson a redetermination letter informing him that the

16    agency had overpaid him by $284.00.  (*Id*. at 20.)  The letter did not explain the reason for the

17    agency's decision, and Johnson appealed the redetermination.  (*Id*.)

18         Johnson does not allege ESD failed to deliver unemployment benefits to him, that ESD

19    offset his unemployment benefit payments, or that he has been or will be denied future

20    unemployment benefits.

21              3.  Elizabeth Ecklund

22         Plaintiff Elizabeth Ecklund ("Ecklund"), a registered nurse, became unemployed in

23    March 2020 and began filing weekly claims for unemployment benefits.  (*Id*. at 21.)  From

24

September 2020 forward, "she filed weekly claims that were not paid despite no explanation or appealable denial decision from ESD." (*Id.*) From January 2021 until April 2021, "several of Ecklund's weekly claims were not paid." (*Id.*) In April 2021, she received a back-pay award for some, "but not all, of the weeks of unemployment benefits she claimed starting in January 2021." (*Id.*) On April 29, 2021, ESD informed Ecklund she had been denied benefits for the period beginning September 6, 2020 because her job separation had disqualified her from benefits. (*Id.*) Ecklund appealed, and an ALJ reversed the agency's determination. (*Id.*)

In February 2022, Ecklund received a letter from ESD informing her that the agency was denying her benefits for the period between March 15, 2020 and March 13, 2021 because Ecklund allegedly failed to respond to the agency's request for information about a past employer. (*Id.* at 21-22.) The February 2022 letter informed Ecklund that she owed the agency $6,320.00 in overpayments for which she was "at fault", but did not provide any further explanation. (*Id.* at 22.) Ecklund appealed the redetermination. (*Id.*)

In March 2022, Ecklund received another redetermination letter from ESD informing her that the agency was terminating her benefits from January 17, 2021 forward because she separated from an employer around that time who "said [she] quit." (*Id.*)

### 4. Robert Erickson

Plaintiff Robert Erickson ("Erickson"), a graphic designer, became unemployed around June 2020, and began receiving unemployment benefits later that year. (*Id.*) In September 2021, Erickson received a letter from ESD informing him that he was being denied unemployment benefits beginning on March 14, 2021 because he had not filed a new application for benefits. (*Id.* at 23.) The letter claimed Erickson had been overpaid $976.00, and that the overpayment could not be waived because he was "at fault." (*Id.*) Erickson claims that when he checked his

1    online account, the overpayment sought by ESD was not $976.00, but approximately $26,000.00.

2    (*Id*.)  Erickson appealed the redetermination.  (*Id*.)

3            Erickson does not allege ESD failed to deliver unemployment benefits to him, that ESD

4    offset his unemployment benefit payments, or that he has been or will be denied future

5    unemployment benefits.

6                    5.  Lauren Colas

7            Plaintiff Lauren Colas ("Colas") began receiving unemployment benefits in March 2020.

8    (*Id*.)  ESD sent Colas a letter in January 2022 informing her that she was "at fault" for an

9    overpayment of $1,302.00.  (*Id*. at 24.)  ESD's letter to Colas stated that Colas did not respond to

10   the Agency's request for information about her alleged self-employment, after which the Agency

11   presumed that she was not available for work because she was self-employed.  (*Id*.)  The Agency

12   terminated Colas' benefits from February 14, 2021 forward.  (*Id*.)   Colas successfully appealed

13   the decision, which an ALJ set aside as void *ab initio*.  (*Id*.)

14           Colas does not allege ESD failed to deliver unemployment benefits to her, that ESD

15   offset her unemployment benefit payments, or that she has been or will be denied future

16   unemployment benefits.

17                   6.  Alexander Juarez

18           Plaintiff Alexander Juarez ("Juarez") received unemployment benefits from April

19   through November of 2020.  (*Id*. at 24.)  In April 2021, ESD sent Juarez a redetermination letter

20   informing him that he owed $22,804.00 in overpayments and stating that the circumstances of

21   his job separation disqualified Juarez from receiving benefits.  (*Id*. at 25.)  Juarez successfully

22   appealed the decision, which an ALJ set aside as void *ab initio*.  (*Id*.)

23

24

1    Juarez does not allege ESD failed to deliver unemployment benefits to him, that ESD

2    offset his unemployment benefit payments, or that he has been or will be denied future

3    unemployment benefits.

4            7.  Lori Alexander

5            Plaintiff Lori Alexander ("Alexander") received weekly unemployment benefits from

6    February 21, 2021 to August 21, 2021.  (*Id.*)  In October 2021, ESD sent Alexander a

7    redetermination letter assessing an overpayment of $17,825.00.  (*Id.* at 26.)  ESD had previously

8    sent Alexander a message via her online account titled "Work Refusal - Refusal of Job."  (*Id.*)

9    Alexander, who was not monitoring her online account because she was no longer claiming

10   unemployment benefits, did not see this message, and ESD's automated system determined that

11   she was no longer entitled to benefits due to her failure to respond.  (*Id.*)

12           Alexander appealed this redetermination.  (*Id.*)  She later received a packet from the

13   Office of Administrative Hearing ("OAH") informing her that a potential employer claimed

14   Alexander had declined an offer of work in or around March 2021.  (*Id.*)  An ALJ set aside the

15   agency's redetermination as void *ab initio*.  (*Id.*)

16           Alexander does not allege ESD failed to deliver unemployment benefits to her, that ESD

17   offset her unemployment benefits payments, or that she has been or will be denied future

18   unemployment benefits.

19   **C.  Plaintiffs' Claims**

20           Plaintiffs allege that they face an imminent threat of deprivation of their constitutionally

21   protected property interests.  (Dkt. No. 14 at 27.)  Plaintiffs contend that absent relief, Defendant

22   will continue to send untimely redetermination letters and attempt to collect overpayments that

23   Plaintiffs do not actually owe.  (*Id.*)  Plaintiffs contend that Defendant knew or should have

24

known that she was causing unlawful unemployment determinations through constitutionally

deficient form correspondence, unlawful automatic redeterminations based on non-responses to

information requests and untimely redeterminations that violated Plaintiffs' constitutional rights.

(*Id*.)

Plaintiffs have filed an action pursuant to 42 U.S.C. § 1983, alleging that Defendant has

violated their rights pursuant to the Fourteenth Amendment's Due Process Clause by depriving

them of a constitutionally protected property interest without adequate notice or an opportunity

to be heard.  (*Id*. at 32-33.)  Plaintiffs further allege that Defendant has violated their right to a

fair hearing pursuant to 42 U.S.C. § 503(a)(3) and their right to a timely determination under 42

U.S.C. § 503(a)(1).  (*Id*. at 34-37.)  Plaintiffs also make class action allegations.  The Court has

not certified the class.  (*Id*. at 28-32.)

## II.      LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) motions to dismiss may be based on either the

lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable

legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  Material

allegations are taken as admitted and the complaint is construed in the plaintiff's favor.  *Keniston

v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983).  "While a complaint attacked by a Rule 12(b)(6)

motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the

grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 554–55 (2007) (internal citations omitted).  "Factual allegations must be enough to raise a

right to relief above the speculative level, on the assumption that all the allegations in the

1  complaint are true (even if doubtful in fact)." *Id*. at 555.  The complaint must allege "enough

2  facts to state a claim to relief that is plausible on its face." *Id*. at 547.

3  **III.  DISCUSSION**

4  **A.  Whether Plaintiffs Stated a § 1983 Claim Based on the Fourteenth Amendment
       Due Process Clause**

5

6     1.  Deprivation of a Constitutionally Protected Property Interest

      A § 1983 claim based upon procedural due process has three elements: (1) a liberty or
7
property interest protected by the Constitution; (2) a deprivation of the interest by the
8
government; and (3) lack of process.  *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th
9
Cir. 1993).
10
      The Due Process Clause of the Fourteenth Amendment forbids a state from depriving any
11
person of "life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  "The
12
Due Process Clause does not create substantive rights in property; the property rights are defined
13
by reference to state law."  *Portman*, 995 F.2d at 904.  "To have a property interest in a benefit, a
14
person clearly must have more than an abstract need or desire for it.  He must have more than a
15
unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."
16
*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).
17
      Defendant does not dispute that Plaintiffs have successfully alleged a property interest in
18
those unemployment benefits to which they are entitled under Washington state law.  *See*
19
*Goldberg v. Kelly*, 397 U.S. 254, 262 (1970) (finding that welfare benefits "are a matter of
20
statutory entitlement" for persons qualified to receive them); *Portman*, 995 F.2d at 905–907
21
(finding that the deprivation of pension or disability benefits amounts to the deprivation of
22
constitutionally protected property); *Berg v. Shearer*, 755 F.2d 1343, 1345 (8th Cir. 1985)
23
("Unemployment benefits are a property interest protected by the due process requirements of
24

1    the fourteenth amendment."); *Ross v. Horn*, 598 F.2d 1312, 1317–1318 (3d Cir. 1979)

2    ("[A]ppellants certainly have a property right in receiving unemployment benefits to which they

3    are entitled by statute ... [t]hus it is clear that they may not be deprived of this right without due

4    process.")

5         Instead, Defendant contends that Plaintiffs have not sufficiently alleged a *deprivation* of

6    that property interest because Plaintiffs either successfully appealed ESD's redetermination

7    decision or have pending appeals.  (Dkt. No. 16 at 13.)  Defendant further argues that, except for

8    Sterling, ESD did not attempt to recoup any alleged overpayments either before or after

9    Plaintiffs' appeals, and that an ALJ ultimately ruled in Sterling's favor.  (*Id.*).

10            i.   Sterling and Ecklund

11         With respect to Sterling, the parties do not dispute that ESD's offsets deprived Sterling of

12    unemployment benefits to which he is otherwise entitled; the fact that he may ultimately recover

13    these funds does not cure the deprivation.  "[E]ven the temporary or partial impairments to

14    property rights that attachments, liens, and similar encumbrances entail are sufficient to merit

15    due process protection."  *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991).  There is no question that

16    the deprivation of nearly $7,000.00 to which he was entitled, even temporarily, had a significant

17    impact on Sterling's life and financial circumstances.  Further, in Sterling's case, the fact that

18    Sterling successfully appealed his redetermination does not cure the deprivation because he still

19    has not recouped the improperly offset benefits, despite his repeated communications with the

20    Agency.

21

22

23

24

1    Similarly, Ecklund asserts she was denied unemployment benefits without explanation

2    from September 2020 through December 2020.[1]  (Dkt. No. 14 at 21.)  She further asserts that

3    between January 2021 and April 2021 several weekly claims were not paid despite receiving a

4    back-pay award in April of 2021.  (*Id*.)

5    Accordingly, Sterling and Ecklund both allege they were improperly deprived of

6    unemployment benefits.

7                                   ii.   Remaining Plaintiffs

8    None of the remaining Plaintiffs have alleged an actual deprivation of their

9    unemployment benefits, via offset or otherwise.  (Dkt. No. 14 at 19-27.)  The remaining

10   Plaintiffs instead contend that the redetermination letters themselves constitute at least a

11   temporary or partial deprivation of a property interest like the prejudgment attachment of

12   property seen in *Doehr*.  (Dkt. No. 20 at 16.)

13   *Doehr* involved the attachment of real property prior to judgment, which clouded title,

14   impaired an owner's ability to sell or alienate the property, tainted the owner's credit rating,

15   reduced the chance of using the property to obtain credit, and possibly placed any existing

16   mortgage on the property in default.  510 U.S. at 11.  The redetermination letters in the present

17   case are not alleged to have impaired Plaintiffs' use of the unemployment benefit payments

18   previously paid in any way resembling the interference that was occurring in *Doehr*.  Thus,

19   *Doehr* is inapposite.

20
     _____

21   [1]Ecklund was informed on April 29, 2021 that she was denied benefits beginning September 6,
     2020 because her job separation allegedly disqualified her from benefits.  An ALJ later reversed
22   this decision. (*Id*.)  However, the Amended Complaint does not state whether Ecklund received a
     back-pay award for the period between September and December of 2020.  It states only that she
23   received a back-pay award for the period from January 2021 to April 2021.  (*Id*.) When viewed in
     the light most favorable to the Ecklund, it appears she did not receive unemployment benefits from
24   September to December 2020.

1    Plaintiffs also cite *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887 (6th Cir. 2019), asserting

2    that, "the Court explained that the finding of fraud could interfere with plaintiffs' ability to

3    obtain unemployment benefits to which they would otherwise be entitled to *in the future*."  (Dkt.

4    No. 20 at 16.)  In *Cahoo*, however, once it was "determined that a claimant committed fraud, the

5    individual's right to benefits terminated immediately."  912 F.3d at 893.  A claimant also was

6    subjected to "severe monetary penalties" regardless of whether the claimant had received

7    benefits.  *Id.*  And, a claimant was told that the potential penalties for failing to repay any alleged

8    fraudulent payments could include the interception of income tax refunds, garnishment of wages,

9    or other collection actions.  *Id.* at 894.  It was noted that because the right "to receive benefits

10   immediately terminated when the Agency determined that they had committed fraud; this would

11   have precluded Plaintiffs from successfully filing for unemployment benefits" thereafter.  *Id.* at

12   901.  As a result, the Sixth Circuit concluded, "[d]efendants violated their right to procedural due

13   process by terminating their eligibility for unemployment benefits and seizing their tax refunds

14   without any meaningful pre-deprivation process."  *Id.* at 899.

15   Here, as to the remaining Plaintiffs, the Amended Complaint makes no allegation that

16   ESD failed to deliver unemployment benefits to them, that ESD improperly offset their

17   unemployment benefits payments, or that have been or will be denied future unemployment

18   benefits.  In short, the Amended Complaint fails to identify how the remaining Plaintiffs were

19   deprived of a property interest, i.e., an unemployment benefit.

20       2.   Whether Sterling and Ecklund Received Due Process

21   "In order to state a claim under the fourteenth amendment, the complainant must allege

22   facts showing not only that the State has deprived him of a liberty or property interest but also

23   that the State has done so without due process of law."  *Gearhart v. Thorne*, 768 F.2d 1072, 1073

24

(9th Cir.1985) (quoting *Marrero v. City of Hialeah*, 625 F.2d 499, 519 (5th Cir.1980)) (internal

quotation marks omitted).

For all its consequence, "due process" has never been, and perhaps can never be,

precisely defined. *Lassiter v. Department of Social Servs.*, 452 U.S. 18, 24 (1981). Unlike some

legal rules, due process "is not a technical conception with a fixed content unrelated to time,

place and circumstances." *Id.* Rather, the phrase "expresses the requirement of 'fundamental

fairness,' a requirement whose meaning can be as opaque as its importance is lofty", and whose

application can be an "uncertain" enterprise. *Id.*

Once the Court has found the deprivation of a constitutionally protected property interest,

the Court must employ a three-part balancing test to determine whether a pre-deprivation hearing

is required and what specific procedures must be employed at that hearing. *Brewster v. Bd. of

Educ.*, 149 F.3d 971, 983–984 (9th Cir.1998). The Court must consider: 1) the private interest

that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest

through the procedures used, and the probable value, if any, of additional or substitute procedural

safeguards; and 3) the government's interest, including the function involved and the fiscal and

administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As the Court concludes only Sterling and Ecklund asserted a deprivation of a property

interest, only their claims are subject to the three-part balancing test.

i.   The Private Interest Affected

With respect to Sterling, the private interest affected, the deprivation of nearly $7,000.00

in improperly offset unemployment benefits, is tangible, substantial, and ongoing. Likewise,

improperly denying Ecklund unemployment benefits undoubtedly impacted her ability to pay

1   household expenses and meet personal obligations.  These two plaintiffs have a significant

2   private interest in receiving and keeping their unemployment benefits.

3                    ii.   Risk of Error and Value of Other Safeguards

4         Plaintiffs have adequately alleged that there is a risk of error inherent in ESD's process

5   for determining whether claimants owe overpayments or are even eligible for unemployment

6   benefits.  Plaintiffs allege that ESD's automated system generates claimant communications that

7   are poorly written and confusing and deprive recipients of information sufficient to understand

8   the basis for ESD's decision or for a reviewing ALJ to conduct a hearing on the merits of any

9   appeal. (Dkt. No. 14 at 13.)  They have alleged that ESD has an ongoing policy of automatically

10  redetermining eligibility and assessing overpayments based solely on the claimant's failure to

11  respond within five to ten days to an ESD request for information message.  (Dkt. No. 14 at 15.)

12  Plaintiffs have further alleged that redetermination letters are routinely set aside as *void ab initio*

13  by the OAH when appealed, and that OAH has standing policies to vacate certain ESD

14  redetermination and/or overpayment decisions without a hearing to save time.  (*Id.*)

15        As to the value of the procedural safeguards in place, the "root requirement" of the Due

16  Process Clause is "that an individual be given an opportunity for a hearing *before* he is deprived

17  of any significant property interest."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541

18  (1985) (emphasis in original) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971).

19        "The touchstone of analysis in property deprivation cases is whether the plaintiff received

20  adequate due process before he was *finally* deprived of his property."  *Gearhart*, 768 F.2d at

21  1073 (emphasis in original) ("Since the property rights in demotion and salary can be and were

22  fully restored, we conclude that on balance, the grievance procedure provided adequate due

23

24

process" and the plaintiff received "all the process he was due" before any final deprivation of his interests.)

Sterling alleges that ESD offset his benefits *before* his administrative hearing, and has yet to return these benefits despite an ALJ ruling in his favor.  Ecklund alleges she was improperly denied unemployment benefits between September and December 2020 without any notice of the reasons for the denial (until April of 2021) and that she also was improperly denied benefits for various weeks between January 2021 and April 2021.  Thus, as alleged, Sterling and Ecklund were deprived of a constitutionally protected property interest despite ESD's alleged procedural safeguards.

### iii.  Government Interest and Burden of Additional Procedure

ESD's interest in recovering benefits improperly paid to claimants is certainly substantial. However, ESD has no interest in offsetting benefits before the end of the administrative appeals process, and it certainly has no interest in retaining improperly offset funds after an ALJ has ruled that those funds must be returned.  Nor does it have an interest in denying eligible applicants unemployment benefits.

Further, for those deprived of a constitutionally protected property interest, post-deprivation remedies alone will not satisfy due process if the deprivation resulted from conduct pursuant to an "established state procedure"' rather than random and unauthorized conduct of a state employee.  *Logan v. Zimmerman Brush Co*., 455 U.S. 422, 435-436 (1982)

Accordingly, as alleged, ESD's procedure for assessing overpayments and hearing appeals as to Sterling and its procedures for approving unemployment benefits as to Ecklund were inadequate.

1    Based on all of the above, the Court finds and concludes that Sterling and Ecklund have

2    alleged a § 1983 claims based on the Fourteenth Amendment Due Process Clause.

3    **B.  Whether Plaintiffs' Claims are Barred by the Qualified Immunity Doctrine**

4    Defendant contends that Plaintiffs have not alleged any facts to demonstrate that she

5    caused the constitutional property deprivation at issue, and that Plaintiffs' § 1983 claims are

6    barred by the doctrine of qualified immunity.  (Dkt. No. 16 at 17-23.)

7    Regarding the doctrine of qualified immunity, it generally shields "government officials

8    performing discretionary functions ... from liability for civil damages insofar as their conduct

9    does not violate clearly established statutory or constitutional rights of which a reasonable person

10   would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

11   When a defendant asserts qualified immunity in a motion to dismiss under Rule 12(b)(6),

12   dismissal is not appropriate unless the Court can determine, based on the complaint itself, that

13   qualified immunity applies.  *Groten v. California*, 251 F.3d 844, 851 (9th Cir.2001).  While

14   courts may consider qualified immunity at the pleadings stage, the Ninth Circuit has noted that

15   "[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special

16   problems for legal decision making."  *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018)

17   (citing *Kwai Fun Wong v. United States*, 373 F.3d 952, 956-957 (9th Cir. 2004)).  In  considering

18   qualified immunity at the pleadings stage, "the courts may be called upon to decide far-reaching

19   constitutional questions on a nonexistent factual record."  *Kwai Fun Wong*, 373 F.3d at 957; *see*

20   *also Morley v. Walker*, 175 F.3d 756, 761 (9th Cir. 1999) (on motion to dismiss, court was "not

21   equipped at this stage to determine whether qualified immunity will ultimately protect Walker";

22   issues "must be resolved at summary judgment or at trial").

23

24

1    In certain cases, the attachment of "substantial documentary evidence" to a complaint can

2    obviate the concern over resolving qualified immunity claims prior to discovery.  *Sabra v.*

3    *Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 893 (9th Cir. 2022).

4        In this case, the record does not, at this stage, contain substantial documentary evidence,

5    and there is information relevant to Defendant's qualified immunity defense that is not attached

6    to Plaintiffs' complaint.  Defendant became the Agency's acting Commissioner on February 1,

7    2021 and some of the Agency's alleged conduct impacting Sterling and Ecklund's

8    unemployment benefits is alleged to have occurred after February 1, 2021.  The record,

9    therefore, is unclear concerning precisely when Defendant began exercising oversight and

10   control of the UTAB system, and whether Defendant knew of, or caused through her conduct, a

11   deprivation of Sterling and Ecklund's constitutionally protected interest.

12       For these reasons, the Court denies without prejudice the motion to dismiss on the basis

13   of qualified immunity and the factual assertion that Defendant did not cause the constitutional

14   property deprivation at issue.  The Court will consider these specific defenses at the summary

15   judgment stage, when the Court will have the benefit of a developed factual record.  The Court

16   declines at this stage to take judicial notice of social media profiles, news articles, and video

17   testimony contained in Plaintiffs' Response.  (Dkt. No. 20 at 12-13.)

18       **C.  Whether 42 U.S.C. § 503(a)(1) Provides a Private Right of Action**

19       Defendant contends that Plaintiffs' § 1983 claim based on 42 U.S.C. § 503(a)(1) fails

20   because that statute does not provide a private right of action.  (Dkt. No. 16 at 23-26.)  Defendant

21   relies on *Sherwood v. Richards*, 2022 WL 408273, *1 (N.D. Ill. Feb. 10, 2022) for support.  In

22   opposition, Plaintiffs cite *Brewer v. Cantrell*, 622 F. Supp. 1320 (W.D. Va. 1985); *Cal. Dep't of*

23

24

1   *Hum. Res. Dev. v. Java*, 402 U.S. 121 (1971); *Jenkins v. Bowling*, 691 F.2d 1225 (7th Cir. 1982);

2   and *Eunice v. Ellzey*, 2022 WL 2374165, *1 (D.S.C. Mar. 10, 2022).

3           *Sherwood* points out that nothing in the text of § 503 grants a private right of action to

4   sue a State for relief.  2022 WL 408273, *3 ("nothing in § 503 suggests an individual has a

5   private right of action to sue the State").  It also identified that the Supreme Court has previously

6   held that spending-power statutes, like § 503, "do not confer private rights of action and has

7   'reject[ed] the notion that [the] cases permit anything short of an unambiguously conferred right

8   to support a cause of action brought under §1983.'"  *Id*. (quoting *Gonzaga Univ. v. Doe*, 536

9   U.S. 273, 283 (2002)).  *Sherwood* further noted that the cause of action allowed in *Java* was

10  premised on a California statute that conflicted with § 503(a)(1).  "The Supreme Court [in *Java*]

11  held that the California statute allowing benefits to be stopped if an employer appealed 'must be

12  enjoined because it is inconsistent with s 303(a)(1) of the Social Security Act.'"[2]  *Id*. (quoting

13  *Java*, 402 U.S. at 135).  In short, the *Sherwood* district court determined that absent an allegation

14  that a state statute was inconsistent with the requirements of § 503, "[a]ny claim that a State has

15  not complied with its own statute would not be a claim over which this Court has jurisdiction."

16  *Id*. at 3–4.

17          As with *Java*, both *Brewer* and *Jenkins* involved claims in which a state statute conflicted

18  with § 503.  *See Brewer*, 622 F. Supp. at 1323 ("Plaintiffs argue that the Code of Virginia § 60.1-

19  132 conflicts with 42 U.S.C. § 503(a)(1)."); *Jenkins*, 691 F.2d at 1233 (holding that "the

20  postponement of unemployment benefits under section 602 B of the Illinois act is contrary to

21  sections 303(a)(1) and (3) of the Social Security Act and therefore invalid under the Supremacy

22  clause").  Accordingly, *Brewer* and *Jenkins* fit within *Sherwood*'s reasoning.

23

---

24  [2] Section 303(a)(1) of the Social Security Act is codified at 42 U.S.C. § 503(a)(1).

*Eunice* did find the existence of a private cause of action under § 503(a)(1) premised on *Java*, and also cited *Brewer* and *Jenkins* for support.  *Eunice*, however, did not view *Java* as limited to its holding and did not specifically note the state statutes at issue in *Brewer* and *Jenkins*.

Having reviewed the analyses of § 503(a)(1) in *Eunice* and *Sherwood*, this Court finds *Sherwood* more persuasive.  Nothing in the language of § 503(a)(1) suggests a private right of action.  *Gonzaga* notes that with spending-power statutes, the Supreme Court "reject[ed] the notion that [the] cases permit anything short of an unambiguously conferred right to support a cause of action brought under §1983."  536 U.S. at 283.  And, unlike *Java*, there is no conflicting state statute at issue in this case because Plaintiffs allege only that "§ 503(a)(1) entitl[es] them to timely determinations of unemployment benefits and timely payments thereon."  (Dkt. No. 14 at 36.)

The Court, therefore, concludes § 503(a)(1) does not confer a private cause of action based on the allegations asserted in the Amended Complaint.

**D.  Plaintiffs' § 1983 Claim Based on § 503(a)(3)**

In addition to seeking dismissal of Plaintiffs' §1983 claim based on the Fourteenth Amendment Due Process Clause, Defendant sough dismissal of Plaintiffs' § 1983 claim based on the 'fair hearing' requirement of § 503(a)(3) by asserting that Plaintiffs received due process. (Dkt. No. 16 at 14.)

Prior to *Gonzaga*, courts assumed "that the requirements of due process and those of the 'fair hearing' provision of 42 U.S.C. § 503(a) are co-extensive" and need not be analyzed separately.  *Ross v. Horn*, 598 F.2d 1312, 1318 n.4 (3d Cir. 1979); *see also Kelly v. Lopeman*, 680 F. Supp. 1101, 1104 (S.D. Ohio Jul. 27 1987).  Thus, whether a 'fair hearing' under §

1   503(a)(3) had been provided was evaluated by the same standards applicable to constitutional

2   due process.  Accordingly, because the Court concludes the Amended Complaint states a

3   constitutional due process violation as to Sterling and Ecklund, Defendant's request to dismiss

4   Plaintiffs' § 1983 claim based on the 'fair hearing' requirement of § 503(a)(3) is DENIED.

5            Notwithstanding, the Court notes that it may be inconsistent to dismiss Plaintiffs' § 1983

6   claim based on § 503(a)(1) and yet not dismiss the § 1983 claim based on § 503(a)(3).  Although

7   it is likely that the *Sherwood* analysis applies equally to Plaintiffs' claim based on § 503(a)(3),

8   because Defendant's request to dismiss the § 503(a)(3) claim was limited to a specific issue and

9   because the parties did not brief whether § 503(a)(3) should be treated differently than §

10  503(a)(1), the Court declines to issue a ruling on whether the § 1983 claims based on § 503(a)(1)

11  and § 503(a)(3) should be treated the same at this time.

12            **E.        Whether Washington Law Bars an Award of Damages**

13            Defendant contends that Washington state law bars Plaintiffs from recovering any

14  damages beyond the amount awardable as unemployment benefits.  (Dkt. No. 16 at 27-28.)  The

15  Court declines to rule on the question of damages at this stage.  The Court finds that the issue of

16  damages is more appropriately addressed on summary judgment.

17

18

19

20

21

22

23

24

ORDER ON MOTION TO DISMISS - 20

1

### IV.    ORDER

2      Having considered the pending motion, the  response and reply, and the remainder of the

3  record, the Court finds and ORDERS:

4      1)    As to Plaintiffs David Sherwood Johnson, Robert Erickson, Lauren Colas,

5            Alexander Juarez, and Lori Alexander, Defendant's motion to dismiss their 42

6            U.S.C. § 1983 claim(s) is GRANTED.

7            a.  Plaintiffs are granted leave to amend if they believe they can cure the

8                deficiencies related to these plaintiffs' failure to allege the deprivation of a

9                property interest.  In such instance, their remaining claims would be the same

10               as those of Plaintiffs Damario Rasheed Sterling and Elizabeth Ecklund.

11     2)    As to Plaintiffs Damario Rasheed Sterling and Elizabeth Ecklund, Defendant's

12           motion to dismiss their 42 U.S.C. § 1983 claim based on the Fourteenth

13           Amendment Due Process Clause is DENIED.

14     3)    As to Plaintiffs Damario Rasheed Sterling and Elizabeth Ecklund, Defendant's

15           motion to dismiss their 42 U.S.C. § 1983 claim(s) based on qualified immunity is

16           DENIED without prejudice.

17     4)    As to Plaintiffs Damario Rasheed Sterling and Elizabeth Ecklund, Defendant's

18           motion to dismiss their 42 U.S.C. § 1983 claim based on the 42 U.S.C. §

19           503(a)(3) is DENIED without prejudice.

20     5)    As to Plaintiffs Damario Rasheed Sterling and Elizabeth Ecklund, Defendant's

21           motion to dismiss their 42 U.S.C. § 1983 claim based on the 42 U.S.C. §

22           503(a)(1) is GRANTED.

23

24

ORDER ON MOTION TO DISMISS - 21

Dated this 3rd day of November, 2022.

David G. Estudillo
United States District Judge