1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10
11
12
13
14
15
16

| | |
|---|---|
| DAMARIO RASHEED STERLING et al., | CASE NO. 3:22-cv-05250 |
| Plaintiffs, | ORDER DENYING MOTION FOR SUMMARY JUDGMENT |
| v. | |
| CAMI L. FEEK, Commissioner, Washington State Employment Security Department, in her individual capacity, and in her official capacity, | |
| Defendant. | |

17
18
19
20
21
22
23
24

  This matter comes before the Court on Defendants' motion for summary judgment (Dkt. No. 39) and motion to stay discovery proceedings pending the Court's ruling on the motion for summary judgment.  (Dkt. No. 46.)

  For the reasons set forth below, the Court DENIES Defendants' motion for summary judgment.  Defendants' motion to stay proceedings is DENIED.  Plaintiff's motion for an extension of time (Dkt. No. 59) is GRANTED in part.  The parties' stipulated motion to extend case deadlines (Dkt. No. 65) is GRANTED.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

2
### A.  Procedural History

3
On April 14, 2022, Plaintiffs filed a complaint in this court.  (Dkt. No. 1.)  On June 13,

4
2022, Plaintiffs filed an amended complaint, alleging the Washington Employment Security

5
Department ("ESD" or "The Department") sent them redetermination letters adjusting their

6
unemployment benefits without adequate prior notice or opportunity to be heard.  (Dkt. No. 14 at

7
1.)  Plaintiffs allege these "vague, untimely, and threatening" overpayment notices, which often

8
informed Plaintiffs they owed thousands of dollars to the government, were generated by a

9
defective claims management program.  (*Id*. at 1.)

10
Plaintiffs filed an action pursuant to 42 U.S.C. § 1983, alleging Defendants violated their

11
rights pursuant to the Fourteenth Amendment's Due Process Clause by depriving them of a

12
constitutionally protected property interest without adequate notice or an opportunity to be heard.

13
(*Id*. at 32-33.)  Plaintiffs further alleged Defendants violated their right to a fair hearing pursuant

14
to 42 U.S.C. § 503(a)(3) and their right to a timely determination under 42 U.S.C. § 503(a)(1).

15
(*Id*. at 34–37.)  Plaintiffs also made class action allegations. The Court has not certified the class.

16
(*Id*. at 28–32.)

17
On June 27, 2022, Defendants filed a motion to dismiss.  (Dkt. No. 16.)  On November 3,

18
2022, the Court granted Defendants' motion in part, dismissing Plaintiffs' 42 U.S.C. § 1983

19
claim as to Plaintiffs David Sherwood Johnson, Robert Erickson, Lauren Colas, Alexander

20
Juarez, and Lori Alexander.  (Dkt. No. 25 at 21.)  The Court denied Defendants' motion to

21
dismiss the § 1983 claims of Plaintiffs Damario Rasheed Sterling and Elizabeth Ecklund.  (*Id*.)

22
As to Plaintiffs Damario Rasheed Sterling and Elizabeth Ecklund, the Court denied

23
without prejudice Defendants' motion to dismiss their § 1983 claim(s) based on qualified

24

immunity, denied without prejudice Defendants' motion to dismiss their § 1983 claim based on 42 U.S.C. § 503(a)(3), and granted Defendants' motion to dismiss their § 1983 claim based on 42 U.S.C. § 503(a)(1).  (*Id.*)  On March 16, 2023, the Court granted a stipulated motion to dismiss the claims of Plaintiff Elizabeth Ecklund.  (Dkt. No. 44.)  As such, Mr. Sterling is the only remaining plaintiff.

On March 9, 2023, Defendants filed a motion for summary judgment.  (Dkt. No. 39.)  On March 16, 2023, Defendants filed a motion to stay discovery pending the Court's ruling on the motion for summary judgment.  (Dkt. No. 46.)  Defendants argues Sterling does not have a property interest in the benefits at issue in this case—Pandemic Emergency Unemployment Compensation ("PEUC") provided under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act.  (Dkt. No. 39 at 7.)  Defendants argues even if Sterling was temporarily deprived of a protected property interest, ESD provided notice and opportunity for Sterling to challenge its redetermination, and Sterling's success in pursuing his appeal and receiving reimbursement for benefits offset is evidence that he received sufficient due process.  (*Id.*)

**B.  Benefits Received by Sterling and ESD Redetermination**

Sterling, a professional contractor and refinisher, lost his job in early 2020 due to the COVID-19 pandemic.  (Dkt. No. 34 at 18.)  Sterling applied for unemployment benefits from ESD, was found monetarily eligible, and began receiving unemployment benefits in March 2020. (Dkt. No. 40-3.)  ESD determined Sterling's weekly benefit was $551.00 and the maximum benefit payable was $14,326.00.  (*Id.* at 2.)  ESD also determined Sterling's benefit year was March 15, 2020 to March 13, 2021.  (*Id.*)  After Sterling's regular unemployment benefits ended on September 3, 2020, he applied for and received benefits under the PEUC program.  (Dkt. No. 40-4.)  Sterling continued to receive $551.00 in weekly benefits and his maximum benefits

payable was $7,163.00.  (*Id*. at 2.)  ESD determined Sterling's PEUC benefits were payable from March 29, 2020 through December 26, 2020.  (*Id*.)

In January 2021, ESD audited the payroll and business records of Sterling's former employer for the period January 1, 2019 through December 31, 2019.  (Dkt. No. 40-6.)  ESD's audit found the employer improperly reported payments made to employees for sickness or accident disability under a qualified plan.  (*Id*. at 2.)  ESD based its initial determination of Sterling's benefits on Sterling having received $13,669.00 in the third quarter of 2019.  (Dkt. No. 40-8.)  By removing the amount attributable to his sick leave, Sterling's base wage was adjusted to $13,018.00.  (*Id*.)  This change caused ESD to recalculate Sterling's weekly benefit amount and reduce it from $551.00 to $538.00 and reduced the maximum benefits Sterling could receive as regular unemployment benefits and under the PEUC program.  (Dkt. Nos. 40-8; 40-9.)

On January 29, 2021, ESD sent Sterling a letter informing him that it was redetermining his unemployment benefits, and that the deadline to appeal the redetermination was March 1, 2021. (Dkt. No. 40-8.)  On January 29, 2021, ESD also sent Sterling a notice informing him ESD had overpaid him and that he might owe the department $7,332.00.[1]  (Dkt. No. 40-10.)  The same day, ESD sent Sterling an email via its online system requesting additional information about his claim, and asking him to respond by February 8, 2021.  (Dkt. No. 40-11.)  The email advised Sterling that if he did not respond, his claim could be denied and he could be required to repay the benefits he received.  (*Id*.)  On January 29, 2021, ESD also sent Sterling a notice

---

[1] In the motion for summary judgment, Defendants contend the letter inaccurately identified the amount of the overpayments.  (Dkt. No. 39 at 10, n.7.)  Defendants do not precisely clarify the actual amount offset, citing the figures $6,994.00 and $6,995.00. (Dkt. Nos. 40-20; 55 at 4, n.5.; 56.)  The Court notes these figures, combined with the $339.00 balance remaining in Sterling's ESD account (see below), equals either $7,333.00 or $7,334.00, which is either one or two dollars more than the amount ESD initially claimed was subject to offset.

informing him that his PEUC benefits had been redetermined and that the deadline to appeal was March 29, 2021. (Dkt. No. 40-9.)

On January 30, 2021, ESD sent Sterling a letter regarding the overpayment and informing him ESD might waive the overpayment based on Sterling's response to a series of questions contained in the letter. (Dkt. No. 40-12.) The letter advised Sterling he could respond to the questions via mail, fax, or ESD's online system, but that he needed to respond by February 8, 2021. (*Id*.) On February 11, 2021, ESD sent Sterling another letter. (Dkt. No. 40-13.) It identified that Sterling did not respond to the prior letter regarding a potential waiver and that ESD presumed Sterling did not qualify for a waiver. (*Id*.) Sterling was informed he had until March 15, 2021 to appeal the conclusions contained in the February 11, 2021 letter. (*Id*.)

On February 28, 2021, Sterling filed an appeal via ESD's online system. (Dkt. No. 40-14 at 2.) Under the tab "Appeal Detail," Sterling identified the "Date of Determination" as being February 11, 2021. (*Id*.) In the section wherein Sterling was asked to identify why he disagreed with the determination, Sterling wrote:

> I was approved on 03/23/20 to receive $551 unemployment benefits weekly. Then out of nowhere I receive a letter 1/29/21 about denial in benefits and over payment fees. Telling me that I need to pay on LWA when I have been on the regular unemployment benefits of standby with surface renew, inc. When that claim ended they extended my benefits. I just want to appeal and straighten up all of this mess.

(*Id*.) On March 22, 2021, ESD sent Sterling a letter informing him the ESD had redetermined his PEUC benefits. (Dkt. No. 40-16.) In May of 2021, ESD began offsetting the overpayments it previously determined Plaintiff owed. (Dkt. Nos. 40-17; 40-18.)

On August 11, 2021, an Administrative Law Judge ("ALJ") ruled on Sterling's February 28, 2021 appeal. (Dkt. No. 40-19.) The ALJ concluded Sterling's February 28, 2021 appeal encompassed ESD's January 29, 2021 redetermination letters. (*Id*. at 4–5) ("[T]he undersigned

concludes that the Office of Administrative Hearings does have jurisdiction over the underlying issue that caused the overpayment because the matter has not been adjudicated and the claimant's appeal specifically mentioned the January 29, 2021 Determination Letter and he wanted to appeal that decision."). The ALJ also concluded ESD failed to provide Sterling with adequate notice of the reasons why his claim was re-evaluated. (*Id*. at 4.) The ALJ further concluded ESD failed to inform the parties about the facts leading to the Department's determination and found ESD's redetermination letter did not notify the parties about the statute or regulation upon which its decision was based. (*Id*.) The ALJ found Sterling was not subject to a denial of benefits or responsible for an overpayment under the invalid determination letter issued on January 29, 2021. (*Id*. at 4–5.) The ALJ remanded Sterling's case to ESD so the Department could issue a redetermination letter that provided adequate notice to all parties. (*Id*.)

Sterling claimed that despite the ALJ's ruling, and despite repeated communications with ESD, he was unable to recover the funds offset from his weekly benefits. (Dkt. No. 14 at 18.) On October 23, 2021, and December 17, 2021, several months before he filed his lawsuit, the Department reimbursed Sterling for funds it had previously offset. (Dkt. Nos. 40 at 8; 40-20; 56.)

## II.     LEGAL STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party may meet this burden by showing the non-moving party has failed to provide evidence in support of their case. *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). In determining whether a genuine dispute of material fact exists, "[t]he deciding court must view the evidence, including all reasonable inferences, in favor

of the non-moving party." *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017).  Disputed

facts "that might affect the outcome of the suit under the governing law will properly preclude

the entry of summary judgment," but irrelevant or inconsequential disputes will not preclude

summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III.   DISCUSSION

#### A.  Pandemic Emergency Unemployment Compensation

On March 27, 2020, in response to the COVID-19 pandemic, Congress passed the

Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which created a

cooperative program funded by the federal government and administered by the states to extend

and expand unemployment insurance.  42 U.S.C. § 801.

CARES Act programs included the Pandemic Unemployment Assistance ("PUA")

program, which expanded unemployment benefits for up to 39 weeks.  15 U.S.C. § 9021.  The

CARES Act also created the Federal Pandemic Unemployment Compensation ("FPUC")

program, which allowed for an additional $600 per week for those already receiving

unemployment benefits.  15 U.S.C. § 9023.  The Act also created the Pandemic Emergency

Unemployment Compensation ("PEUC") program, which provided 13 extra weeks of benefits to

people who had exhausted their state unemployment benefits.  15 U.S.C. § 9025.

Under the PEUC, "[a]ny State which desires to do so may enter into and participate in an

agreement under this section with the Secretary of Labor."  *Id*. at § 9025(a)(1).  The PEUC

further provided that "[a]ny State which is a party to an agreement under this section may, upon

providing 30 days' written notice to the Secretary, terminate such agreement."  *Id*.  The

temporary PEUC program ended on September 6, 2021.  *Id*. at § 9025(g)(2).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**B.  Whether Plaintiff Has a Property Interest in PEUC Benefits**

The Due Process Clause of the Fourteenth Amendment forbids a state from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV. However, "[t]he Due Process Clause does not create substantive rights in property; the property rights are defined by reference to state law." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). A § 1983 claim based upon procedural due process has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process. (*Id.*) "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

Defendants do not dispute Plaintiff has successfully alleged a property interest in those unemployment benefits to which he is entitled under Washington state law. *See Goldberg v. Kelly*, 397 U.S. 254, 262 (1970) (finding that welfare benefits "are a matter of statutory entitlement" for persons qualified to receive them); *Portman*, 995 F.2d at 905–907 (finding that the deprivation of pension or disability benefits amounts to the deprivation of constitutionally protected property); *Berg v. Shearer*, 755 F.2d 1343, 1345 (8th Cir. 1985) ("Unemployment benefits are a property interest protected by the due process requirements of the fourteenth amendment."); *Ross v. Horn*, 598 F.2d 1312, 1317–1318 (3d Cir. 1979) ("[A]ppellants certainly have a property right in receiving unemployment benefits to which they are entitled by statute ... [t]hus it is clear that they may not be deprived of this right without due process.")

Defendants instead argue Sterling has no property interest in the receipt of PEUC benefits that would allow him to maintain a claim under § 1983. (Dkt. No. 39 at 12–14.) Defendants cite

several recent district court cases assessing whether the CARES Act generated property rights in supplemental benefits distributed under programs like PEUC.  *Dickerson v. Texas*, Case No. H-21-2729, 2021 WL 4192740, at *2–3 (S.D. Tex. Sept. 15, 2021) (because the supplemental benefits conferred by the CARES Act could be terminated at the discretion of the State receiving them, these benefits "are not protected nor are they entitlements."); *Moss v. Lee*, Case No. 3:21-CV-00561, 2022 WL 68388, at *6–7 (M.D. Tenn. Jan. 6, 2022) (finding the CARES Act created *temporary* federal benefits to *supplement* state benefit programs and there was no private right of action under the CARES Act for temporary supplemental federal benefits).

A reasonable expectation of entitlement to a benefit is determined "largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms." *Wedges/Ledges of Cal., Inc. v. City of Phx.*, 24 F.3d 56, 62 (9th Cir. 1994).  A benefit is "not a protected entitlement [under the procedural component of the Fourteenth Amendment's Due Process Clause] if government officials may grant or deny it in their discretion."  *Ching v. Mayorkas*, 725 F.3d 1149, 1155 (9th Cir. 2013), quoting *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005).

Sterling contends that because Washington State chose to participate in the PEUC program, ESD was statutorily required to pay PEUC benefits to individuals who qualified for them.  (Dkt. No. 49 at 22.)  Sterling further argues while States could terminate their participation in the PEUC program, they could not exercise discretion on whether to approve or deny benefits to eligible claimants on a case-by-case basis.  (Dkt. No. 49 at 24.)  Sterling contends the language of the CARES Act, which requires participating States to pay benefits to eligible claimants and provide an opportunity to be heard before requiring repayment or making

1   deductions, creates a statutory entitlement to PEUC benefits for qualified applicants in those

2   States who elect to participate in the program.  (*Id*.)

3        The Court finds these arguments unpersuasive.  The relevant question is not whether

4   Washington State elected to participate in the program, but rather whether the statute that created

5   the program permits the State to terminate the benefit at its discretion.  "[T]he existence of

6   provisions that retain for the state *significant discretionary authority over the bestowal or*

7   *continuation* of a government benefit suggests that recipients of such benefits have no

8   entitlement to them."  *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 581 (2d Cir.1989)

9   (emphasis added); *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 410 (6th Cir.2002) (A statute

10  creates a protected property interest when it "both confers [a] benefit and *limits the discretion* of

11  the [government] to rescind the benefit.") (emphasis added).

12       Sterling cites a Second Circuit case, *Kapps v. Wing,* which considered whether, in the

13  administration of New York's Home Energy Assistance Program ("HEAP"), defendants violated

14  the procedural requirements of the Due Process Clause and the federal Low Income Home

15  Energy Assistance Act ("the LIHEAA").  404 F.3d 105, 108 (2d Cir. 2005).  In support of his

16  argument, Sterling references the following passage from *Kapps*:

17          Under state law, eligible HEAP applicants are entitled to receive benefits, so long
18          as funding for the benefits remains available. To the extent that LIHEAA program
            funds are available, the fact that the HEAP program is, as a general matter, limited
            to the extent of federal funding does not matter. Plaintiffs' claim of entitlement –
19          while the funds remain available – is the same as it would be were the program not
            contingent on the availability of sufficient funds.
20
    404 F.3d 105, 118 (2d Cir. 2005).
21
22       Sterling's citation to *Kapps* is inapposite.  In assessing whether the plaintiffs had a

23  property interest in the benefits received under HEAP and LIHEAA, the Second Circuit looked

24  to the statutes and regulations governing the distribution of benefits and applied Second Circuit

1    case law, which required the court to consider whether the state statute or regulation at issue

2    "meaningfully channels official discretion by mandating a defined administrative outcome." *Id*.

3    at 113, quoting *Sealed v. Sealed*, 332 F.3d 51, 56 (2d Cir.2003). If it does, a property interest

4    will be found to exist. *Id*. at 113.

5        The *Kapps* court found the federal LIHEAA did not, by itself, create a property interest

6    because the statute "affords substantial discretion to the states, both in deciding whether to

7    participate in the home energy program, and, if they choose to participate, in crafting their own

8    state-level home energy laws." *Id*. at 113. The *Kapps* court found the New York state law,

9    HEAP, imposed "substantive predicates" limiting the decision-making of HEAP officials which

10   conferred a constitutionally protected property right. *Id*.

11       There is not, in this case, a similar state law affecting the implementation of the CARES

12   Act. The statute that created the PEUC permits States to terminate their participation in the

13   program by providing 30 days written notice to the Secretary of Labor. 15 U.S.C. § 9025(a)(1).

14   Because the benefits conferred by the PEUC program may be terminated at the discretion of the

15   States receiving them, the CARES Act does not create an entitlement to these benefits that would

16   give rise to a constitutionally protected property interest.

17       To the extent Sterling's § 1983 claim is based on funds distributed under the PEUC

18   program, the claim fails because Plaintiff is unable to establish a property interest in receiving

19   PEUC benefits.

20   **C. There Is A Question of Fact Regarding Whether ESD's Offsets Were PEUC**
     **Funds or Regular State Unemployment Funds**

21

22       There remains a factual dispute whether the offsets at issue relate to the PEUC program

23   or to the State's regular unemployment program.

24

1    Defendants contend the only benefits at issue in this case are the PEUC benefits Plaintiff

2    received under the CARES Act.  (Dkt. No. 39 at 14.)  Defendants state no regular unemployment

3    benefits Sterling received between March 20, 2020 and September 3, 2020 were included in

4    ESD's overpayment determination and were not subject to any offset.  (Dkt. Nos. 39 at 14; 40-10

5    at 5.)  Defendants further contend the only deprivation Sterling alleges in his Second Amended

6    Complaint is $6,994.00 in offsets from Sterling's "continuing claim payments" while Sterling's

7    appeal was pending.  (Dkt. Nos. 34 at 20; 55 at 8.)  Defendants claim this refers to offsets to

8    those PEUC benefits Sterling was being paid during the pendency of his appeal.  (Dkt. No. 55 at

9    8.)

10    Sterling disputes this, arguing some of the assessed overpayments included regular

11    unemployment benefits.  (Dkt. No. 49 at 21.)  Sterling notes the $339.00 outstanding balance

12    owed to him is from an overpayment related to his receipt of his last regular unemployment

13    benefit payment in September 2020.  (Dkt. No. 39 at 9, n. 5.)  Sterling also notes four offsets of

14    $13.00 were from his regular state unemployment benefits and cites a reference in a letter from

15    ESD to overpayments assessed for the week ending September 26, 2020.  (Dkt. Nos. 40-8 at 5;

16    40-10 at 5; 51-6 at 3.)

17    The Department concedes there is a balance of $339.00 remaining on Plaintiff Sterling's

18    account.  (Dkt. No. 40 at 8.)  The Department states this balance originates from a recalculation

19    of Plaintiff's weekly benefit amount based on the change in Sterling's base rate in January 2021.

20    (*Id.*)  ESD claims these funds are a "vestige" of the $7,332.00 assessed as an overpayment, of

21    which only $6,994.00 was recovered via offsets.  (Dkt. No. 55 at 4, n. 5.)  ESD stated it would

22    normally credit Sterling's account in an amount equal to the balance and without any additional

23    request, but that it placed a "hold" on Sterling's account at this case's inception "to ensure that

24

ESD took no further action related to Mr. Sterling during the pendency of the case." (Dkt. No. 40 at 8.)  ESD claims this hold was placed at the request of Plaintiff's counsel.  (Dkt. No. 55 at 4, n. 5.)  ESD claims it will credit these funds to Sterling upon the resolution of this case or at Plaintiff's request.  (Dkt. No. 40 at 8.)

The Court has reviewed the record and the various spreadsheets provided but is unable to determine whether the offsets at issue relate to the PEUC program or to the State's regular unemployment program.  While there appears to be a strong suggestion that the offsets at issue relate to the PEUC program, viewing the evidence in Plaintiff's favor, the Court finds there is a genuine dispute concerning the origin of the offsets at issue.  Accordingly, the Court finds that granting Defendants' motion for summary judgment is improper at this stage.

### D.  Whether Sterling was Deprived of a Constitutionally Protected Property Interest

In ruling on Defendants' motion to dismiss, the Court found Sterling sufficiently alleged he was deprived of a constitutionally protected property interest when ESD offset unemployment benefits to which Sterling was otherwise entitled.  (Dkt. No. 25 at 10.)  In doing so, the Court concluded that even a temporary deprivation of Sterling's regular unemployment benefits constituted a deprivation of a constitutionally protected property interest.  (Dkt. No. 25 at 10); *see Connecticut v. Doehr*, 501 U.S. 1, 12 (1991) ("[E]ven the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection.")  Because the facts, when viewed in the light most favorable to Plaintiff, indicate the offsets included some regular state unemployment benefits, Sterling has established he was deprived of a property interest for purposes of Defendants' motion for summary judgment.

1

**E.      Whether Sterling Received Due Process**

2

Having found the deprivation of a constitutionally protected property interest, the Court

3

must employ a three-part balancing test to determine whether a pre-deprivation hearing is

4

required and what specific procedures must be employed at that hearing.  *Brewster v. Bd. of*

5

*Educ.*, 149 F.3d 971, 983–984 (9th Cir.1998).  The Court must consider: 1) the private interest

6

that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest

7

through the procedures used, and the probable value, if any, of additional or substitute procedural

8

safeguards; and 3) the government's interest, including the function involved and the fiscal and

9

administrative burdens that the additional or substitute procedural requirement would entail.

10

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

11

1.   The Private Interest Affected

12

With respect to Sterling, the private interest affected, the deprivation of nearly $7,000.00

13

in improperly offset unemployment benefits, is substantial.[2]  Sterling had a private interest in

14

receiving and keeping his unemployment benefits, the temporary deprivation of which

15

undoubtedly affected his ability to meet his needs.

16

2.   Risk of Erroneous Deprivation and Value of Other Safeguards

17

ESD's existing procedure for assessing overpayments as applied to Sterling carries some

18

risk that individuals who receive unemployment benefits will be erroneously deprived of benefits

19

to which they are otherwise entitled.  As the Administrative Law Judge found, ESD failed to

20

provide Sterling with adequate notice of the reasons why his claim was re-evaluated, failed to

21

inform the parties about the facts leading to the department's determination and did not notify

22

23

24

[2] While it there is a strong suggestion that most of the nearly $7,000 in offsets relate to the PEUC program, for purposes of this motion the Court is obligated to assume a significant portion, if not all, is related to regular State unemployment benefits.

1    the parties about the statute or regulation upon which its redetermination decision was based.

2    (Dkt. No. 40-19 at 4.)  The ALJ found ESD's redetermination letter was invalid and that Sterling

3    was not responsible for an overpayment.  (*Id*. at 4–5.)

4          As to the value of the procedural safeguards in place, the "root requirement" of the Due

5    Process Clause is "that an individual be given an opportunity for a hearing *before* he is deprived

6    of any significant property interest."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541

7    (1985) (emphasis in original) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971). "The

8    touchstone of analysis in property deprivation cases is whether the plaintiff received adequate

9    due process before he was *finally* deprived of his property."  *Gearhart v. Thorne,* 768 F.2d 1072,

10   1073 (9th Cir. 1985) (emphasis in original) ("Since the property rights in demotion and salary

11   can be and were fully restored, we conclude that on balance, the grievance procedure provided

12   adequate due process" and the plaintiff received "all the process he was due" before any final

13   deprivation of his interests.).

14         However, for those deprived of a constitutionally protected property interest, post-

15   deprivation remedies alone will not satisfy due process if the deprivation resulted from conduct

16   pursuant to an "established state procedure"' rather than random and unauthorized conduct of a

17   state employee.  *Logan v. Zimmerman Brush Co*., 455 U.S. 422, 435–436 (1982).

18         Here, the ALJ found Plaintiff lodged a proper appeal challenging ESD's January 29,

19   2021 redetermination.  (*See* Dkt. No. 40-19 at 3–4) ("Based on RCW 50.20.190, the undersigned

20   concludes that the Office of Administrative Hearings does have jurisdiction over the underlying

21   issue that caused the overpayment because the matter has not been adjudicated and the

22   claimant's appeal specifically mentioned the January 29, 2021 Determination letter and he

23

24

1    wanted to appeal that decision."[3]).  Although Defendants assert Sterling never properly appealed

2    the January 29, 2021 redetermination letter, the ALJ rejected that argument.  Thus, despite

3    Sterling having filed a proper appeal, ESD began offsetting his unemployment benefits before

4    the appeal was decided.

5         Accordingly, the Court finds that ESD began depriving Plaintiff of his unemployment

6    benefits before the appeal process was complete.  Because ESD was indifferent to Plaintiff's

7    appeal, the opportunity to be heard in Sterling's case was effectively illusory, and the value of

8    the procedural safeguards in place was therefore marginal at best.

9              3.  Government Interest and Burden of Additional Procedure

10        ESD has an interest in recovering benefits improperly paid to claimants.  ESD does not

11   have an interest in offsetting benefits before the end of the administrative appeals process.

12        ESD argues the burden of providing pre-deprivation hearings would be substantial.  (Dkt.

13   No. 39 at 19.)  While the Department does not provide an estimate of the cost, ESD contends

14   offering pre-deprivation hearings would impose an administrative burden and make it more

15   difficult for the Department to recoup overpaid benefits.  (*Id.*)  The precise cost of holding a pre-

16   deprivation hearing is uncertain.  Yet, it is clear that ESD does provide pre-deprivation hearings

17   to individuals who appeal a determination letter as ESD offers individuals like Sterling the

18   opportunity appeal its determinations.  Notwithstanding, ESD chose not to wait for the

19   completion of Sterling's appeal before offsetting his benefits.

20

21

22

23   ─────────────────
     [3] The record provides no indication that the ALJ's findings were vacated and thus, they appear to
24   remain valid.

In weighing the *Mathews* factors, and when viewing the facts in the light most favorable to Sterling, the Court concludes Defendants have failed to establish they are entitled to dismissal of Plaintiff's § 1983 claim as a matter of law.

### F.  Plaintiff's Section 503(a)(3) Claim

Courts have generally held that the requirements of due process and 42 U.S.C. § 503(a) are co-extensive and need not be analyzed separately.  *See e.g. Cosby v. Ward*, 843 F.2d 967, 982 (7th Cir. 1988) ("Whether the statutory 'fair hearing' requirement has been met is tested by the same standards as constitutional procedural due process."); *Ross v. Horn*, 598 F.2d 1312, 1318 n.4 (3d Cir. 1979); *Kelly v. Lopeman*, 680 F. Supp. 1101, 1104 (S.D. Ohio Jul. 27 1987). For the reasons discussed above regarding Plaintiff's § 1983, Defendants' motion for summary judgment with respect to Plaintiff's Section 503(a)(3) claim is DENIED.

## IV.    ORDER

1) Defendants' motion for summary judgment (Dkt. No. 39) is DENIED.

2) Defendants' motion to stay (Dkt. No. 46) is DENIED.

3) Plaintiff's motion for an extension of time (Dkt. No. 59) is GRANTED in part.

4) The parties' stipulated motion to extend the deadlines (Dkt. No. 65) is GRANTED.

5) A separate order providing the new case deadlines will be entered in conjunction with this order.

Dated this 5th day of September, 2023.

David G. Estudillo
United States District Judge